**MAGNOLIA PETROLEUM COMPANY, Plaintiff,**

v.

**TEXAS ILLINOIS NATURAL GAS PIPELINE COMPANY, Defendant.**

**Civ. A. No. 8503.**

United States District Court
S. D. Texas, Houston Division.

Nov. 13, 1954.

Butler, Binion, Rice & Cook, George Rice, Houston, Tex., Ross Madole, Earl A. Brown and C. B. Wallace, Dallas, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, Leon Jaworski, Houston, Tex., Ross & O'Keefe, Chicago, Ill., Culton, Morgan, Britain & White, Amarillo, Tex., for defendant.

CONNALLY, District Judge.

The action is instituted by Magnolia Petroleum Company, a producer and gatherer of natural gas, against Texas Illinois Natural Gas Pipeline Company, a transporter of natural gas in interstate commerce, seeking (a) injunctive relief to restrain such defendant from pursuing a proceeding which it heretofore has instituted before the Federal Power Commission; (b) a declaration of the rights of the parties under the terms of written contracts between them; and

(c) money damages. The controversy results from the holding by the Supreme Court of the United States in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035.

A brief summarization of the facts will suffice. They are without substantial dispute, except as noted. During 1950, Magnolia, as seller (together with a number of other sellers similarly situated), entered into two written contracts with Texas Illinois, as purchaser, concerning the sale of natural gas. The first dealt with gas produced from the so-called "La Gloria" area, and the second with that produced in the "Clayton" area of South Texas. The two contracts are similar in the respects which are here pertinent and will be considered as one. Two provisions of the contracts occasion the present controversy. The first (Article VIII) provides, in effect, that in the event, during the continuance of the contract, the Federal Power Commission should by valid order impose regulation upon seller with respect to the production, gathering, processing, and sale of gas under such contract, then the seller is entitled, upon thirty days' written notice, to terminate the contract. The second controversial provision (Article III) reserves to the seller the right to use, from the gas reserves dedicated to fulfillment of the contract, at seller's option and discretion, such quantities as may be required for its own purposes, including cycling or repressuring operations.

It is well to note at this point that prior to June 7, 1954, being the date of the opinion of the Supreme Court in Phillips Petroleum Co. v. Wisconsin, supra, a producer-gatherer of natural gas was not considered by the industry or by the Federal Power Commission to constitute a "natural gas company", as that term is used in the Natural Gas Act, 15 U.S.C.A. § 717 et seq., nor was it considered that the activities and sales of such companies were subject to regulation by the Commission. The Power Commission had specifically so held in the Phillips Petroleum Company pro-

ceeding 10 F.P.C. 246; and Magnolia had been operating since 1941 under an "exemption certificate" issued by the Commission specifically finding that Magnolia was not a "natural gas company".

Shortly after the handing down of the Phillips opinion, the Federal Power Commission entered ex parte its Order No. 174 (July 16, 1954, 19 F.R. 4534) wherein it undertook to assert jurisdiction, in some respects at least, over the producing-gathering companies.

This order required such producers and gatherers selling natural gas in interstate commerce for resale (as did Magnolia under these contracts) to file their rate schedules and other data with the Commission, and ordered *that no change be made in any rate, charge, or service in effect on and after June 7, 1954, for the sale of natural gas in interstate commerce, subject to the jurisdiction of the Commission, without prior Commission approval.* Said Order No. 174 thereafter was superseded by Order No. 174–A (August 6, 1954, 19 F.R. 5081), although without substantial change in the particulars above mentioned.

Contending that the promulgation of Orders 174 and 174–A by the Commission gave it the right to terminate under Article VIII of the contract above mentioned, Magnolia gave notice in writing to Texas Illinois of its intention to take advantage of such provision. The contractual time interval has now expired. Thus, if Magnolia be correct in its contention, the contract has been terminated under this provision. However, Magnolia has continued to furnish gas to Texas Illinois upon the same terms and conditions as it did under the written contract, and is doing so at the present time.

The quantities of gas delivered by Magnolia to Texas Illinois have shown considerable decline. Magnolia contends that the reason therefor is its use of substantial quantities for repressuring operations as permitted under Article III. Texas Illinois contends that excessively large quantities are withdrawn from the output of the dedicated gas for

repressuring purposes, that Magnolia's exercise of discretion has not been bona fide, and it (Texas Illinois) is entitled to the larger quantities which it initially received.

The claim for money damages is based upon the contention that Texas Illinois has failed to pay to Magnolia the three-fourths of the increase in severance tax levied by the State of Texas in September, 1954, which, as buyer, it agreed that it would pay under the terms of Article XVI of the contract.

Magnolia's complaint was filed here September 17, 1954. While the prayer is exceedingly broad, specifically it seeks a declaratory judgment (1) to the effect that its purported cancellation of the contract was proper, and that it need not continue delivering gas to the defendant; (2) that its withdrawals of gas for repressuring were proper, and that it incurred no liability to the defendant by reason thereof. It likewise asks a money judgment of some $30,000 for the alleged failure of the defendant to pay the full contract price for gas previously delivered.

Five days thereafter, the defendant filed a complaint and petition before the Federal Power Commission, Docket No. G–2951, complaining of the plaintiff Magnolia and of the other sellers from whom it purchased gas under the same contract.

Alleging the facts to be as above, in its complaint before the Commission, Texas Illinois took the position that since Phillips Petroleum Co. v. Wisconsin, Magnolia and the other sellers were now "natural gas companies" within the terms of the Natural Gas Act and were subject to full regulation by the Commission. It alleged that the producers already had curtailed, and pursuant to the notice of cancellation were threatening to discontinue, its supply of gas. Contending that such enforcement of the contract provisions would be contrary to the public interest (as well as to its own), and in violation of the Commission's order, Texas Illinois prayed that the Commission issue its order to the effect that Articles III and VIII are null and void, and directing that the defendants desist from curtailing deliveries, and that the Commission institute a proceeding in the proper court to secure injunctive relief to this end.

On October 11, 1954, the plaintiff countered in this Court with its "Motion for Injunction" wherein it alleged that the questions and issues involved in this civil action are identical with those involved in the proceeding just mentioned before the Commission; that this action is earlier in point of time; that this Court should restrain the defendant from prosecuting further the proceeding before the Commission in order *to protect this Court's jurisdiction.* No contention is made of threatened irreparable injury.

Defendant, in turn, has moved to dismiss, contending that plaintiff submitted itself and this controversy to the Power Commission on or about August 11, 1954, when plaintiff filed with the Commission a "Petition for Rehearing" attacking Orders 174 and 174–A, and that such "Petition for Rehearing" of plaintiff (together with that of a great many others similarly affected) has not been finally acted upon by the Commission. Defendant likewise contends that the same issues also were raised before the Commission in Docket No. G–2219, "In the Matter of Texas Illinois Natural Gas Pipeline Company", which likewise is still pending.

As a second ground for dismissal, defendant contends that the issues presented by plaintiff's complaint are within the primary jurisdiction of the Federal Power Commission and should be initially determined by that agency; and that plaintiff may not avail itself of judicial relief until it has exhausted its administrative remedy.

Other matters and issues raised by the pleadings are not considered of controlling importance.

Motion to Dismiss.

█ While it well may be that all of the declaratory relief sought by the plaintiff may not properly be granted

here, the defendant's "Motion to Dismiss" overlooks the fact that this Court's jurisdiction is invoked by the allegation of one or more causes of action clearly within the scope of its jurisdiction. As noted above, plaintiff alleges that the defendant is indebted to it in the sum of $30,000 by reason of the failure to pay the contract price for gas delivered. The defendant answers that the price itself is in dispute; that the contract price is not controlling, and the correct price must be determined by the Commission. But the Commission has no authority to award a money judgment if in fact the plaintiff be entitled thereto; and when reached for trial on the merits, this Court may determine what the lawful rate may have been at the time in question (whether fixed by contract or by Commission order), and may enter such judgment as the facts warrant.

Similarly, the controversy over the amounts withdrawn from production for recycling by the plaintiff should be determined here. The question of whether plaintiff's discretion was exercised in good faith as it contends, or whether in bad faith as the defendant contends, resulting in breach of contract, is peculiarly appropriate for judicial rather than administrative determination. The fact that an administrative agency may have before it for consideration the same controversy as comes before the Court does not deprive the latter of jurisdiction, Oil Workers International Union v. Texoma Natural Gas Co., 5 Cir., 146 F.2d 62.

■ But wherein the plaintiff seeks a declaration of its rights and status under the contract, and the effect of its attempted cancellation, the Court may not appropriately give relief. This is no more nor less than an attempt to secure from this Court a ruling on the validity of Orders 174 and 174–A, under the guise of a judgment declaring the rights of the parties under the contract. Neither the plaintiff's pleadings nor the evidence discloses any controversy between the parties as to any matter pertaining to the contract. No question has been raised as to its validity, or as to the interpretation of any of its terms. Clearly, *under the contract,* plaintiff has cancelled and is entitled to cease deliveries. The only dispute is as to the effect of the promulgation of Orders 174 and 174–A, and whether, by reason thereof, the plaintiff is compelled to continue.

■ This being so, the plaintiff's case for declaratory judgment must fail for a number of reasons. First, the orders in question presently are under review by the Commission, and the plaintiff first must secure a ruling by that agency and must follow the avenues of judicial review provided in the Natural Gas Act before seeking relief elsewhere, Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and cases there cited; Bradley Lumber Co. v. N. L. R. B., 5 Cir., 84 F.2d 97, and second, the declaratory judgment procedure is not the proper vehicle by which to secure judicial review of an order of an administrative body or the scope of its statutory authority. Public Service Commission v. Wycoff, 344 U.S. 237, 73 S. Ct. 236, 97 L.Ed. 291; Bradley Lumber Co. v. N. L. R. B., supra; Arkansas Power & Light Co. v. F. P. C., 81 U.S. App.D.C. 178, 156 F.2d 821, Reversed 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261; Riss & Co. v. I. C. C., 86 U.S.App.D.C. 79, 179 F.2d 810.

The arguments advanced by Magnolia attacking the validity of the Commission's orders are most persuasive. Magnolia says that under the specific terms of the Natural Gas Act, § 717b of Title 15 U.S.C.A., and the cases interpreting this provision, Federal Power Commission v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499, the *production* and *gathering* of natural gas by the plaintiff, as well as its facilities used therein, are exempt from Federal Power Commission control and are excluded from its jurisdiction; thus, Magnolia argues it may decrease, or completely terminate, its *production* of gas without appeal to, or approval of, the Commission, Federal Power Commission v. Panhandle Eastern Pipe Line Co., sup-

ra. That being so, Magnolia argues that 174-A exceeds the Commission's statutory grant of authority in ordering that no change be made in the service in effect on June 7, 1954. Putting it differently, Magnolia argues that in ordering the continuation of the amount of gas sold and delivered on June 7, 1954, the Commission is, in effect, controlling production and gathering, Panhandle Eastern Pipe Line Co. v. F. P. C., 3 Cir., 204 F.2d 675.

The second attack is made on constitutional grounds in that in requiring on August 6, 1954, a continuation of the service in effect on June 7, 1954, the property of the producer-gatherer is being devoted to a public use or service without his consent and without compensation. Magnolia points out that it has always been, and presently is, its desire to operate its properties free of Commission control; that it operated under the "Exemption Certificate", above mentioned, prior to the promulgation of Order 174 on August 6; that it cannot now be compelled to continue to produce and to sell without being afforded an opportunity to withdraw its property from the public use to which it presently is being devoted. Having entered the field when the business was not subject to regulation, Magnolia argues that the Commission cannot, by a retroactive order, make it subject to regulation, and then force Magnolia to continue in the regulated business, Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103. Such an order has ex post facto effect. The Court is not rejecting these arguments. Rather, the ruling is that they must be asserted elsewhere.

Magnolia answers the contention that the validity of the orders should first be tested by the statutory method of judicial review with the argument that the orders are null and void, and subject to collateral attack. The case may be treated, so it says, as though no such orders were issued. I cannot agree. The operations of Magnolia are parallel in all particulars to those of Phillips Petroleum Company, which were held in Phillips Petroleum Co. v. Wisconsin, supra, to constitute that company a "natural gas company". Magnolia cannot escape the same fate. Magnolia argues that if it were a "natural gas company" on June 7, 1954, it is no longer, because it contends it cancelled the contract under which the sales were made to Texas Illinois. But if this argument be accepted, the answer to it is clear. Despite the attempted cancellation, Magnolia has continued to sell to Texas Illinois down to the present time. Whether it be that such recent sales were under the written contract, or whether pursuant to some new oral or implied agreement, the sales have continued; and it is the sale in interstate commerce of natural gas for resale which brings the company within the reaches of the statute.

■ Being a "natural gas company", Magnolia's sales in interstate commerce for resale are subject to regulation. What the regulation of "sales" means, and the extent to which such regulation may go, are questions that as yet have not been finally answered either by the Commission or by the Courts. Being subject to at least some regulation by the Commission, Magnolia may not treat the orders as complete nullities, and subject to collateral attack, despite the fact that they may, in some particulars, exceed the Commission's authority [1]

The cause of action for declaratory relief being one of which the Court should not assume jurisdiction, the defendant's Motion to Dismiss will to that extent, be granted, otherwise denied.

Injunctive Relief.

■ The Court having declined jurisdiction of the controversy over the validity of the Commission's orders and the relationship of the parties resulting therefrom, it follows that the injunction

[1]. In this connection, it may be noted that the Power Commission has shown a restraint unique among the administrative agencies which normally appear in this Court in adopting a restricted view of the limits of its own jurisdiction.

sought by the plaintiff to protect that jurisdiction (the only basis alleged for injunctive relief), will be denied. But there are other reasons worth mentioning. In Docket No. G–2951 before the Commission, Magnolia is only one of many defendants. On the hearing, no doubt the Commission will explore fully the extent to which it may regulate the deliveries of gas from sellers to the buyer, and the controversies which spring therefrom. Now, the Commission may regulate the *sale* of such gas, Phillips Petroleum Co. v. Wisconsin, supra; it may not regulate the production and gathering. Federal Power Commission v. Panhandle Eastern Pipe Line Co., supra. The Court may not assume that the Commission will go beyond the regulation of sales, and that it will exceed its authority when the proceeding is determined; and should not, in my opinion, restrain Texas Illinois from proceeding there against this single party.

The injunction will be denied. The Motion to Dismiss, in part denied and in part granted.

The foregoing is adopted as Findings of Fact and Conclusions of Law.

Clerk will furnish counsel a copy of this memorandum.