**PUBLIC SERVICE ELECTRIC AND GAS COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
Respondent.
Texaco, Inc. and Transcontinental Gas
Pipe Line Corporation, Intervenors.

No. 15423.

United States Court of Appeals
Third Circuit.

Argued Feb. 25, 1966.

Decided Jan. 18, 1967.

ton, Tex., on the brief), for Intervenor Texaco, Inc.

Thomas F. Ryan, Jr., Washington, D. C. (Richard J. Connor, Thomas F. Brosnan, Washington, D. C., Lawrence H. Gall, William N. Bonner, Jr., Houston, Tex., on the brief), for Intervenor Transcontinental Gas Pipe Line Corp.

Scott Scammell, II, Large, Scammell & Danziger, Flemington, N. J., for Northwest Jersey Natural Gas, Inc., Successor to City Gas Company of New Jersey.

John R. Sailer, Sailer & Holzapfel, Elizabeth, N. J., for Elizabethtown Consolidated Gas Co.

Sidney M. Schreiber, Schreiber, Lancaster & Demos, Newark, N. J., for New Jersey Natural Gas Co.

Robert G. Koury, Cole & Koury, Atlantic City, N. J., for South Jersey Gas Co.

William T. Coleman, Jr., Robert W. Maris, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for Philadelphia Gas Works Division of The United Gas Improvement Co.

Vincent P. McDevitt, Samuel G. Miller, Philadelphia, Pa., for Philadelphia Electric Co.

Arthur J. Sills, Atty. Gen. of New Jersey, Maria D. Stroumtsos, Deputy Atty. Gen., Newark, N. J., for Board of Public Utility Commissioners of New Jersey.

Before HASTIE and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

Edward S. Kirby, Associate Gen. Sol., Public Service Electric and Gas Co., Newark, N. J. (William H. Blake, J. Harry Mulhern, Newark, N. J., on the brief), for petitioner.

Howard E. Wahrenbrock, Sol., Federal Power Commission, Washington, D. C. (Richard A. Solomon, Gen. Counsel, Washington, D. C., Paul A. Sweeney, Special Consultant, on the brief), for respondent.

William K. Tell, Jr., Texaco, Inc., Houston, Tex. (William R. Slye, Hous-

## OPINION OF THE COURT

SMITH, Circuit Judge.

This matter is before the Court on a petition to review the action of the Federal Power Commission in granting a certificate of public convenience and necessity to Transcontinental Gas Pipe Line Corporation (Transcon) under § 7 (c) and (e) of the Natural Gas Act as amended, 15 U.S.C.A. § 717f(c) and (e). The petitioner assigns as error not only the granting of the said certificate but also the Commission's disclaimer of ju-

risdiction over Texaco, Inc., (Texaco). The questions raised are not entirely free from difficulty. It should be noted that the position of the petitioner is supported by six utility companies, granted leave to appear amicus curiae.

## RELATIONSHIP OF PARTIES

Transcon is a "natural-gas company" within the meaning of § 2(6) of the Act, 15 U.S.C.A. § 717a(6), and as such is engaged in the transportation of natural gas in interstate commerce. It maintains transmission lines which extend from the Gulf Coast area of Texas and Louisiana to a terminus in New York. Texaco is a producer of natural gas and the owner of reserves located in the said area and in close proximity to Transcon's lines. It is also the owner and operator of an oil refinery in West Deptford, New Jersey, in close proximity to Transcon's lines. Public Service Electric and Gas Company (Public Service), a contract customer of Transcon, is a public utility engaged in the distribution and sale of natural gas. Its service territory includes West Deptford.

The primary interest of Public Service is in the alleged intrusion of Transcon into its territory and the possible loss of Texaco as a contract customer. The only interest of the other utility companies is the precedent allegedly established by the Commission's action and its possible impact on their future operations. Their common concern is economically motivated.

## FACTS

Contemplating a conversion of its refinery operations so as to permit the utilization of natural gas instead of oil as an industrial fuel, Texaco entered into a contract with Transcon pursuant to the terms of which the latter agreed to transport natural gas owned by the former from mutually acceptable points in Texas and Louisiana to a point approximately four miles from the former's refinery in New Jersey. At this point Texaco would accept delivery and then transport the gas through its own pipeline to its plant facility. Transcon agreed to bear the risk of loss while the gas was in its possession in transit, except for loss due to force majeure as defined by the contract. The proposed transportation service was made subject to such authorizations as were required by applicable law, including the Natural Gas Act.

Under the terms of the contract Texaco would make available to Transcon at the delivery points up to 8000 MCF (thousand cubic feet) per day for firm transportation and up to 16,000 MCF per day for interruptible transportation. However, Transcon would not be required to receive at the Texas delivery points a daily volume in excess of 10,000 MCF. It was contemplated by the parties, and their contract in effect so provided, that daily deliveries by Texaco at the said points would approximate daily redeliveries by Transcon at the specified point in New Jersey, operating conditions permitting. The proposed rate for the transportation of gas on an interruptible basis was 22 cents per MCF, the same rate charged to Sun Oil Company for a similar service. Since no issue is here made as to the rate for the transportation of gas on a firm basis it becomes irrelevant.

It was recognized by the parties, and their contract so provided, "that the natural gas delivered by Texaco for transportation * * * [would] necessarily be commingled in Transcon's pipeline system with gas received from other sources, and that the specific gas delivered to Transcon by Texaco [could not] be redelivered to Texaco." It was further agreed that gas redelivered by Transcon would be of merchantable quality and comparable to the gas delivered by Texaco to Transcon in the field.

Pursuant to the applicable provisions of the Act, Transcon made application to the Commission for authority to construct, install and operate additional pipelines, facilities and equipment necessary to the performance of the proposed transportation service covered by the

**4**

contract. After extensive hearings the certificate of public convenience and necessity here in question was granted. Texaco filed no application and the failure of the Commission to require it to do so is a principal issue in this case.

## NATURE OF TRANSACTION

The first question for decision is whether Texaco was required by § 7(c) of the Act, 15 U.S.C.A. § 717f(c), to obtain a certificate of public convenience and necessity. The answer depends upon the nature of the transaction. If the contract is construed as contemplating a "sale in interstate commerce of natural gas for resale" within the meaning of § 1(b) of the Act, 15 U.S.C.A. § 717(b), then such a certificate was required. If the contract is construed as covering nothing more than a conventional arrangement for the transportation of natural gas for hire then the only aspect of the transaction subject to the Commission's jurisdiction was the transportation. The latter construction, adopted by the Commission, is here challenged as erroneous.

■■ The parties to this proceeding admit that in the transportation operations gas delivered by Texaco to Transcon in the field would be commingled with gas purchased by Transcon for subsequent resale. The petitioner maintains that under these circumstances the arrangement between Texaco and Transcon would involve an exchange of gas made available by Texaco in the field for commingled gas ultimately redelivered by Transcon at West Deptford. With this as a premise it argues that the arrangement must be treated as involving a sale of gas in interstate commerce for resale, subject to the jurisdiction of the Commission. We do not agree. An essential ingredient of an exchange is a transfer of title, and this was clearly not intended by the parties. The arrangement between Texaco and Transcon would involve nothing more than the bailment of a fungible commodity. Brown on Personal Property 2d Ed. § 78; 8 Am.Jur.2d Ed., Bailments, § 40.

The argument advanced by the petitioner was answered by the Commission as follows:

"We conclude that the mere physical commingling of Texaco's gas in Transcon's lines with gas Transcon has purchased for subsequent resale does not compel rejection of historic notions of bailments and require us to transform the transportation agreement into a succession of sales, by Texaco to Transcon and again by Transcon to Texaco. An essential feature of this transaction is that Texaco is the owner of the gas both at the beginning and the end of its journey from the wellhead to the point of ultimate consumption. It has merely contracted for conventional transportation arrangement subject to the Commission's jurisdiction."

The Commission went on to hold that under the circumstances Texaco's proposed operations were not subject to regulation.

■ The petitioner concedes that the contract is silent as to the transfer of title but contends that an intent to transfer title should be inferred from Transcon's agreement to assume the risk of loss while the gas was in its possession in transit. We find the contention to be without merit. Transcon contracted to furnish a conventional transportation service and the liability it agreed to assume was similar to that ordinarily imposed on the carrier of goods at common law. See Commodity Credit Corporation v. Norton, 167 F.2d 161, 164 (3rd Cir. 1948); United States v. Mississippi Valley Barge Line Co., 285 F.2d 381, 388 (8th Cir. 1960); L. E. Whitlock Truck Service, Inc. v. Regal Drilling Co., 333 F.2d 488, 491 (10th Cir. 1964). A transfer of title is clearly not essential to the contractual assumption of this type of liability.

It seems to us that the petitioner's reliance on People of State of California v. Lo-Vaca Co., 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965) is misplaced. Therein a producer of natural gas, hav-

ing adequate resources in Texas, entered into two contracts with an interstate pipeline company engaged in the transportation and sale of gas in interstate commerce. The first of these provided for the sale of gas for subsequent industrial use in facilities maintained by the purchaser in Texas. The second provided for the sale of gas for subsequent industrial use in facilities maintained by the purchaser in New Mexico and Arizona, a transaction clearly subject to Commission jurisdiction under § 7(c) of the Act, supra. Pursuant to the terms of these contracts delivery was to be made to a subsidiary of the purchaser at a point in Texas. It was understood by the parties that the gas purchased under these contracts would flow in a commingled stream with gas from other sources, a substantial portion of which would be resold in interstate commerce. The parties attempted by the contracts to evade Commission jurisdiction. The Court, affirming the decision and order of the Commission, applied the doctrine of commingling and held that the entire transaction was subject to jurisdiction. On facts similar to those in Lo-Vaca, the Court reached that same conclusion in Federal Power Commission v. Amerada Petroleum Corp., 379 U.S. 687, 85 S.Ct. 632, 13 L.Ed.2d 605 (1965). The question here raised by the petitioner was not reached by the Court in either of the cited cases.

The claim to Commission jurisdiction in Lo-Vaca and Amerada was sustained on facts which are not present in the case now before us. Texaco is the producer and owner of gas which it proposed to use as an industrial fuel in its refinery at West Deptford. It contracted with Transcon for conventional transportation service for which the latter was to receive a fixed charge per MCF of gas transported. The arrangement would not involve either a sale by Texaco to Transcon or a resale by Transcon to Texaco. The expected commingling of gas owned by Texaco with gas purchased by Transcon for resale would not alter the substance of the transaction. We are of the opinion that under these circumstances the doctrine of commingling, as applied in Lo-Vaca and Amerada, has no application in the instant case because of the absence of a jurisdictional sale for either consumption or resale. Further, the arrangement between Texaco and Transcon was not devised to avoid regulation; in fact, the transaction was cast in a form which made it subject to the jurisdiction which the Commission properly assumed.

## CONTINUITY OF INTERSTATE COMMERCE

██ It is agreed that performance of the contract by Transcon would require redelivery of transported gas to a Texaco owned pipeline, a terminus of which is located approximately four miles from the refinery. Texaco would accept redelivery at the terminus and then transport the gas in its own pipelines to the refinery. The petitioner here argues, as it did before the Commission, that this transportation by Texaco would be "transportation * * * in interstate commerce," within the meaning of § 1(b) of the Act, 15 U.S.C.A. § 717(b), for which a certificate of public convenience and necessity should have been required. In support of its argument the petitioner cites Federal Power Commission v. East Ohio Gas Company, 338 U.S. 464, 70 S. Ct. 266, 94 L.Ed. 268, which we believe to be distinguishable on its facts from the instant case.

The Commission, adopting the position taken by the Examiner on the issue, held that Texaco's pipeline was an integral part of its plant facility and that interstate commerce ceased when the transported gas was redelivered at the terminus. The Commission decided that under these circumstances a certificate of public convenience and necessity should not be required. This decision, with which we agree, is in accord with three earlier Commission decisions. Anchor Hocking Glass Corp., 2 F.P.C. 930; Jersey Central Power and Light Co., 9 F.P.C. 717; Montana Power Co., 10 F.P.C. 950.

**6**

### CHALLENGE TO FINDINGS OF FACT

The Examiner filed an initial decision in which he reviewed the evidence and summarized in detail the findings of fact upon which his ultimate conclusion to grant the certificate rested. The decision "with respect to the public interest aspects of the application" was adopted by the Commission and expections thereto were denied. On a joint petition for rehearing filed by Public Service and the intervening utilities the objections to the Commission's order were considered and the petition was denied.

 The petitioner challenges as erroneous specific findings relating to: the relationship of end use to the public interest; the preemption of available pipeline capacity; the alleged loss of cheap expansibility; the availability of valley capacity; the need by Texaco and the economic advantage to it of the proposed service; and, the settlement proposal submitted by Public Service. Although these findings are subject to review, they are conclusive if supported by "substantial evidence." § 19(b) of the Act, 15 U.S.C.A. § 717r(b); Shell Oil Company v. Federal Power Commission, 334 F.2d 1002, 1012 (3rd Cir. 1964).

The administration of the Natural Gas Act has been entrusted to the Commission. We must therefore bear in mind the comprehensive authority vested in the Commission and the statutory limitation on the scope of review. It is the function of the Commission to evaluate the evidence, find the facts, and draw the inferences of which the relevant evidence is reasonably susceptible. But its function does not end there. It must bring to bear an expert judgment and determine "from its analysis of the total situation on which side of the controversy the public interest lies." Federal Power Commission v. Transcontinental Gas Corp., 365 U.S. 1, 7, 81 S. Ct. 435, 439, 5 L.Ed.2d 377 (1964). The Commission may exercise a veto power over proposed transportation but can do so only when a balance of all the circum-

stances weighs against certification. *Ibid*, 17, 81 S.Ct. 435. It is the limited function of the Court to determine whether, on a consideration of the record as a whole, the findings of fact are supported by "substantial evidence."

We have examined the record in its entirety and are convinced by our examination that the challenged findings of fact are based upon a thoughtful consideration of the evidence as a whole and a discriminating evaluation of competing factors. The decision of the Commission and its opinion on the petition for rehearing clearly indicate that careful consideration was given to all the factors bearing on the public interest.

The petitioners have advanced several arguments which we have not discussed. However, we have considered them and find them lacking in substantial merit.

The decision and order of the Commission will be affirmed.