MANSFIELD, Circuit Judge
(concurring):
I concur in the decision that the bankruptcy court erred in treating Bristol’s Rule 12(b) motion to dismiss as a motion for summary judgment without giving notice to GM, which would have enabled GM to introduce evidence with respect to the central issue on the merits, whether its tolling arrangement with Bristol was a bailment rather than a sale. However, I believe it is important also to note certain erroneous statements by the bankruptcy judge — one with respect to a determinative fact and the other with respect to governing legal principles — both of which bear directly on the question of whether the arrangement was a bailment or a sale. Otherwise, even if GM on remand introduces additional evidence the bankruptcy judge may misconstrue our silence as an approval of these erroneous statements, which could lead to another wasteful appeal and reversal.
Under the Bankruptcy Code, if the toll arrangement was a bailment, then GM is entitled to recover the toll metal. 4 Collier on Bankruptcy ¶ 541.08[2], at 541-39. If it was a sale, then GM’s failure to file a financing statement subordinates its interests to the interests of Bristol as debtor-in-possession with the powers of a trustee and of National Acceptance Company of America (NACA), Bristol’s principal secured creditor.
The bankruptcy judge held that the arrangement was a voluntary financing arrangement, with GM in the role of a “financing buyer,” and had aspects of both a sale and a security device whereby GM retained title as a security interest for Bristol’s duty either to return the toll metal or to pay for it. The judge rejected the bailment theory, holding that bailments apply only to non-fungible goods and that the commingling of delivered scrap metal in the present case destroys the possibility of a bailment. Finally, the judge distinguished two prior cases finding a bailment, on the grounds that here the scrap metal was commingled and Bristol had the option either to return the metal or pay for it.
I disagree for several reasons. First, the bankruptcy court clearly erred in finding that Bristol had the option of returning the unused toll metal or paying for it. The judge presumably relied on If 9 of the “Terms and Conditions” of the standard form purchase order (A. 75) attached to the tolling agreement. However, 19(a) of the tolling agreement expressly states that it will prevail where a conflict with the standard form exists, and H 4(b)(7) of the tolling agreement requires Bristol to return the toll metal to GM upon expiration or termination of the agreement. (A. 68). Thus Bristol had no unilateral right to determine whether it would purchase the material. Second, the judge erred in holding that the law of bailments is inapplicable to fungible goods. When commingling is required by the needs of the trade and is done with the consent of the parties a bailment is established if that is the intent of the parties. *31 See Public Service Electric & Gas Co. v. FPC, 371 F.2d 1, 4 (3d Cir.), cert. denied, 389 U.S. 849, 88 S.Ct. 33, 19 L.Ed.2d 119 (1967); 8 Am.Jur.2d, Bailments, § 51; Brown, Law of Personal Property, § 10.6 (3d ed.). Thus a bailment may exist when the parties recognize that toll material is fungible without requiring that the specific material be held by the fabricator for the customer which delivered it to be processed.
The bankruptcy court’s analysis is thrown into serious doubt and may well be reversible on the merits as a matter of law when the foregoing two erroneous premises are rejected. In my view, there is persuasive evidence that the parties intended to and did create a bailment. That Bristol was obligated to return the toll metal rather than purchase it is indicative of a bailment. 4 Collier on Bankruptcy ¶ 541.08[2] at 541-39; 8 Am.Jur.2d, Bailments, § 51. The agreement specifically reserved title in GM until the toll metal was converted, i.e., until the toll metal ceased to exist as scrap. (¶ 4(b), A. 68). In addition, the agreement did not provide a price term governing Bristol’s alleged “purchase” of toll metal from GM. Furthermore, GM bore all the risks associated with price fluctuations of scrap metal, since these were not reflected in the conversion price paid to Bristol for making strip. Significantly, Bristol does not carry toll material on its books as an asset; indeed, in its “Statement of Financial Affairs for Debtor Engaged in Business” Bristol listed “Customer Toll Metal” under the category of “Property held for another person.” (A. 77). Similarly, NACA knew that Bristol held toll metal and in the periodic reports of inventory filed by Bristol with NACA toll metal was not included as Bristol’s inventory. (A. 50). Thus not only does Bristol’s behavior suggest it viewed the arrangement as a bailment but nothing in its conduct could have misled third-party creditors into believing that it owned the toll metal as its own asset.
Two decisions strongly support this outcome. In In re Medomak Canning Co., 25 U.C.C.Rep.Serv. 437 (Bkrtcy., D.Me.), aff’d, 588 F.2d 818 (1st Cir. 1978), the court cautioned against too great a reliance on occasional sales terminology in an agreement, and held that the arrangement constituted a bailment. Significantly, it noted that the arrangement made economic sense, since the bailor had the capital to obtain all the necessary ingredients and supplies for canned pork and beans, and the packer Medomak had idle processing capacity but lacked capital; therefore the bailor delivered the supplies to Medomak and paid only when the packed cans were shipped to the customers. The Court found that the financial incentive behind the arrangement did not preclude a bailment, since “the interests of neither party would appear to have been conveniently served by a true sale.” Id. at 446. This is directly at odds with the bankruptcy court’s decision in the present case which found that financial incentives rendered GM a “financing buyer,” one who pays in advance to enable his seller to manufacture the desired goods. (A. 20). In Eastman Kodak Co. v. Harrison, 639 F.2d 1213 (5th Cir. 1981), Kodak shipped scrap film to a refiner, who paid Kodak for the extracted silver only after it processed the film. Citing Medomak as precedent, the 5th Circuit held the arrangement to be a. bailment. The bankruptcy court below attempted to distinguish these cases on the grounds that (1) Bristol had the option of returning the toll metal or paying for it, and (2) in both these precedents the delivered goods were kept separately and could be identified from other toll goods. However, since premise (1) is clearly wrong and premise (2) is not legally significant where the other evidence, as here, shows an intent to create a bailment the bankruptcy court’s decision appears to be erroneous on the merits even without GM’s introduction of additional evidence that the arrangement was a bailment.
I trust that the bankruptcy court will upon remand take these matters into consideration in deciding the factual issue.