**CABOT CORPORATION, Appellant,**

**v.**

**Martha BROWN, et al., Appellees.**

**No. 13–85–070–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Roger Townsend, Fulbright & Jaworski, Houston, for appellant.

E.R. Norwood, Taylor & Norwood, Liberty, for appellees.

Before BENAVIDES, UTTER and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This appeal involves a gas lease by which appellant (Cabot) was found to have breached its implied duty to reasonably market the gas in issue and was held liable for its failure to pay appellees the market value of their gas royalties. Based upon the jury's answers to special issues, the court awarded appellees damages of $424,083.14, plus attorney's fees of $44,000.00, post-judgment interest, and court costs.

This case was submitted on stipulated facts. On August 15, 1967, Cabot Corporation (Cabot) and Transwestern Pipeline Company (Transwestern) entered into a

contract labeled "Exchange of Gas, Texas Panhandle." Cabot commenced delivery of gas on March 8, 1968.

Leases between Cabot and appellees regarding gas produced from Kelln Well No. 1 require Cabot to pay royalties to appellees based on the market value of the gas produced at the wellhead, in the event that gas is used or sold off the premises.

The Kelln gas was transmitted by Cabot to Transwestern's pipeline through Cabot's gasline. The gas volume is metered before being placed in Transwestern's pipeline to determine the volume delivered by Cabot. The Transwestern pipeline is part of an interstate gas transmission system which extends from Texas to California. The Kelln gas is delivered into a portion of Transwestern's interstate gas transmission system located in Roberts County, Texas. The delivery point of the exchange gas received by Cabot from Transwestern is located in Gray County, Texas. The gas volumes are also metered there to determine the volumes delivered by Transwestern to Cabot.

At all times material to this suit, the gas from Transwestern to Cabot is transported to Cabot's Kingsmill Gas Processing plant in Gray County, where it is commingled with and processed with gas produced or purchased by Cabot or its affiliates from the intrastate market. From March 1977 to the present, the majority of the residue gas remaining after processing has been disposed of through the intrastate market.

Cabot paid Transwestern 2¢ per MCF [1] under the exchange agreement for the gas transferred. From March 1, 1977 through October 1, 1980, Cabot paid royalties to appellees based on the price of 38¢ per MCF for gas produced from Kelln Well No. 1, and from October 1, 1980 to present, paid royalties based on 80¢ per MCF. At trial, appellees sought and received additional royalties as damages for Cabot's failure to reasonably market the gas at intrastate rates for the period of March 19, 1977

to the date of judgment for gas produced by Cabot and sold or used off the premises.

Appellees sought recovery at trial under two theories: (1) appellees sought additional royalties on gas produced by Cabot from the Kelln Well on the basis of the intrastate market value of such gas, because that gas was never dedicated to interstate commerce and therefore never subject to the pricing jurisdiction of the Federal Power Commission (FPC) or its successor agency, the Federal Energy Regulatory Commission (FERC); (2) appellees claimed that even if the gas was dedicated to interstate commerce and subject to FPC jurisdiction, under an implied duty to reasonably market the gas Cabot should have sought and could have obtained from the FPC an abandonment of jurisdiction over the gas, so the gas would have been free to be sold in intrastate commerce.

Appellant brings seven points of error.

By its first two points, appellant asserts that, as a matter of law, the evidence established that the gas was dedicated to interstate commerce, or alternatively, appellees waived recovery by failing to submit a special issue asking whether the gas was dedicated to interstate commerce. We disagree.

■ To be dedicated to interstate commerce, there must be a sale for resale of gas into interstate commerce. 15 U.S.C. § 717(b) (1984). The contract between Cabot and Transwestern was labeled an exchange of gas agreement, and was treated as such.

■ In its findings and order issued December 19, 1967, (Plaintiff's Exhibit No. 5), the FPC outlines the details of the agreement between the parties. The findings state that "title to the gas will pass at the respective delivery points." This transfer of title, however, is at most a method to provide for risk of loss. There is nothing in the Commission's findings to indicate a sale of gas, nor do we find any indication of intent by either party to create a sale from this transaction. *Roeser & Pendleton v.*

---

1. Million cubic feet.

*Overlees,* 34 S.W.2d 906 (Tex.1931). As noted in *Public Service Electric & Gas Co. v. Federal Power Commission,* 371 F.2d 1, 4 (3rd Cir.1967), the arrangement would be nothing more than a bailment of a fungible commodity. Moreover, simply because the gas flows through interstate pipelines does not mean the gas must be valued at interstate prices. *Id.* at 5.

■ The FPC notes in its Declaration of Exemption for Cabot (filed on April 21, 1975 and issued by the FPC on September 26, 1975), that the transportation of natural gas between Cabot and Transwestern is a pure exchange of gas. The Commission goes on to state that:

> All of the gas transported by Applicant [Cabot] in its Carson and Gray County pipeline system, including the volumes received from Transwestern, is commingled, transported, sold and ultimately consumed entirely within the State of Texas.

The contract between Cabot and Transwestern did not establish a dedication of the gas to interstate commerce.

■ Appellee sought to prove intrastate market value, not interstate value. The issue of interstate value was, therefore, a defensive issue which appellant had the burden to submit at trial or bear the consequences of a deemed finding in support of the judgment. TEX.R.CIV.P. 279; *Pasadena Associates v. Connor,* 460 S.W.2d 473, 479 (Tex.Civ.App.—Houston [14th] 1970, writ ref'd n.r.e.).

■ The gas produced from the leases in question were sold within Texas. While evidence of interstate gas price regulation may be admissible, such evidence does not bind the fact finder as a matter of law in its determination of market value. *Exxon Corp. v. Middleton,* 613 S.W.2d 240, 248 (Tex.1981). Appellant's first two points are overruled.

In its third point of error, appellant asserts that the division orders and evidence established as a matter of law that appellees suffered no damages.

Appellees introduced evidence that the total difference between what was paid and what should have been paid in royalties, from March 1977 through April 1984, was $424,083.14. The jury found that Cabot failed to reasonably market the Kelln gas from September 1974 to December 1, 1978; that appellees were damaged as a result of Cabot's failure, and that the sum of money which would compensate appellees for their damages from March 19, 1977 to the present was $424,083.14, with reasonable attorney's fees for necessary services being $44,000.00.

■ It is a fundamental precept of the common law of this state that neither a trial court nor an appellate court may substitute its judgment for that of a jury when there is evidence in which the jury could have believed either side's version of the disputed issue. *Caterpillar Tractor Co. v. Boyett,* 674 S.W.2d 782, 788 (Tex.App.—Corpus Christi 1984, no writ).

A review of the division orders indicates that they are form orders which do not establish whether damages were incurred.

Cabot's manager of oil and gas sales, Mr. Ralph Robinson, testified that the gas is not "sold" pursuant to the transportation and exchange contract between Cabot and Transwestern, and to the extent that the division orders reflect that Transwestern is a buyer they are inaccurate. He also testified that although the orders state that payment for gas shall be made to the royalty owners, at the then effective price provided in the gas contract, there is no price provided in the contract for the sale of gas, and in that respect the orders are inaccurate as well.

■ Although division orders are binding on the parties involved, the division orders in this case did not set forth with specificity the method for royalty payments. *Exxon Corp.,* 613 S.W.2d at 250.

The division orders state that:

> 2. Payments for gas shall be made to the above-named owners, ... in proportion to their respective interests as shown above at the then effective price

provided in that certain Gas Contract dated *August 15, 1967,* covering said land, entered into by and between *Cabot Corporation,* as seller, and *Transwestern Pipeline Company* as buyer, and pursuant to the provisions of any extension . . . or, if such gas sale be subject to the jurisdiction of the Federal Power Commission, at the price (rate) finally determined by the Federal power Commission to be applicable to the gas delivered.

The division orders do not alleviate appellant from its implied duty to act in good faith in marketing the gas of its royalty owners. *Amoco Production Co. v. First Baptist Church of Pyote,* 579 S.W.2d 280, 285 (Tex.App.—El Paso 1979), *writ ref'd n.r.e. per curiam,* 611 S.W.2d 610 (Tex. 1980). What occurred here is similar to that in *Le Cuno Oil Co. v. Smith,* 306 S.W.2d 190 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.), *cert. denied,* 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1147. As in *Le Cuno,* respecting the FPC rates, the regulatory body simply made no effort to and did not fix a rate as between [Cabot] and [appellees]. *Le Cuno,* 360 S.W.2d at 193. The *Le Cuno* Court states:

> The FPC wisely made no effort to come between the producer and its royalty owners and left the matter of costs and charges as between them to their own arrangement. The FPC rate sets an over-all amount per MCF of gas and no more tries to say what the gatherer will pay his producers for gas than it tries to tell him what he will pay his laborers for labor or suppliers for material. *The regulatory authority of FPC is not involved in this suit.* Nor can it be said that that agency has exclusive jurisdiction of the controversy between these litigants or even that there is any controversy between the litigants that the FPC in the exercise of its lawful authority might determine, see *Magnolia Petroleum Co. v. Texas Illinois Natural Gas Pipeline Co.,* D.C., 130 F.Supp. 890; 4 Oil & Gas Reporter, 408–411. [emphasis added]

*Le Cuno,* 360 S.W.2d at 194. *See also Mobile Oil Corp. v. Federal Power Commission,* 463 F.2d 256, 263 (D.C.Cir.1972); *cert. denied* 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676 (1971).

In *Amoco,* the court held:

> [I]f, as the Court said in the *Le Cuno* case, the division orders which provide for payment based on the price received at the wells require the exercise of the highest good faith, the original obligation has not changed and the division orders do not diminish the duty owed to these royalty owners. And in this connection it must be noted that these division orders are with the lessee, Amoco, and not a third party purchaser. Thus, we conclude that *Le Cuno* controls as to the facts in this case. Those points of error asserting to the contrary are overruled.

*Amoco,* 579 S.W.2d at 288.

Appellant's third point is overruled.

By point of error four, appellant claims that absent a deemed finding that the FPC would have granted an application for abandonment, appellees waived recovery on the contention that Cabot failed to reasonably market the gas. Again, appellee's failure to submit a special issue on abandonment would result in a deemed finding of fact so as to support the judgment. TEX.R.CIV.P. 279. Cabot's objection to the absence of the special issue, overruled by the trial court, did not preclude recovery. The trial court did not err in the broad issue submission, nor in failing to submit an issue on abandonment. The issue of abandonment is but one element of appellees' cause of action for breach of duty to reasonably market the gas. It is within the trial court's discretion whether to submit separate questions with respect to each element of a case or to submit issues broadly. TEX.R.CIV.P. 277. Such an exercise of discretion by a trial court should not be overturned unless there is a clear showing of abuse. *See Island Recreational Development Corp. v. Republic of Texas Savings Assoc.,* 29 S.Ct.J. 344 (May 14, 1986); *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486, 487 (Tex.App.—Corpus

Christi 1982, writ ref'd n.r.e.). *See also Amoco Production Co. v. Alexander,* 622 S.W.2d 563, 568 (Tex.1981), where evidence was introduced that Amoco (lessee) failed to apply for administrative relief, the jury found that Amoco did not operate as a reasonably prudent operator and was therefore liable for losses caused by its breach of implied duty to protect the leasehold. It was not necessary for appellees to have secured a jury finding that abandonment would have been granted in order to show damages. *See id.* at 569. We overrule appellant's fourth point of error.

By its fifth and sixth points, appellant claims there was no evidence or insufficient evidence to support the jury's finding that Cabot failed to reasonably market the gas, and that such failure resulted in damages. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

Regardless of gas shortages and curtailments noted by appellant, we find no reason not to uphold the jury's answers in this case. We cannot speculate whether an abandonment would or would not have been granted; this goes to the weight and not admissibility of the evidence.

Appellees provided evidence of comparable agreements between Cabot and Diamond Shamrock, Pioneer, and Ingersoll-Rand Oil & Gas Equipment Co., showing purchases made in the intrastate market during the period 1974–1978. Appellees, through energy consultant Frank Bolton, introduced expert evidence that appellant failed to reasonably market the gas, and introduced dollar figures of damages caused by such failure. Bolton testified that an intrastate market was available for the Kelln gas during the time period in

question; that a reasonably prudent operator would have sought abandonment on Cabot's behalf, and that a reasonably prudent operator would have marketed the gas under a contract similar to that executed between Cabot and Diamond Shamrock regarding a well in Hemphill County. Bolton also testified that had appellant marketed the gas as would a reasonably prudent operator, appellees would have recovered an additional $424,083.14 in royalty payments.

There was sufficient evidence to support the jury findings. Appellant's fifth and sixth points are overruled.

Finally, appellant asserts that, as a matter of law, appellees waived recovery based on an implied duty to reasonably market the gas by failing to introduce into evidence the lease agreements under which they assert an implied duty.

Appellee pled a cause of action only on an implied duty to reasonably market the gas, not on the basis of an express covenant to market. The parties agreed to fact stipulations which established the contractual relationship regarding the Kelln gas unit. Moreover, appellant failed to submit evidence to rebut its implied duty to reasonably market the gas.

The cases appellant cites are unrelated to oil and gas proceedings. *Celanese Coating Co. v. Soliz,* 541 S.W.2d 243, 248 (Tex. Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) involves a garnishment proceeding in which the trial court did not consider evidence relating to the contents of an insurance policy. In *Wann v. Metropolitan Life Ins. Co.,* 41 S.W.2d 50 (Tex.Comm'n App. 1931, holding approved), the dispute was with regard to group policy insurance referred to in an individual policy. The group policy was not offered into evidence, nor was any effort made to prove its contents. In *Wann,* the plaintiff's cause of action was based upon the group policy itself.

Here, appellee's cause of action is based upon an implied duty to market the gas apart from express covenants con-

tained in the lease. Whether or not the implied obligation or duty is expressly contained in the original lease is immaterial. In *Amoco,* the Supreme Court stated the following:

> ... The terms "obligation," "duty," and "covenant" have been used interchangeably in oil and gas cases to describe the performance required of a lessee under an oil and gas lease. Traditionally, matters relating to the development of the lease and the protection of the lessor's interest are not expressly included in the written lease. Since the early history of oil and gas litigation, the courts have held that covenants are implied when an oil and gas lease fails to express the lessee's obligation to develop and to protect the lease. In recent years, implied covenants have been expanded to matters of management of the lease. The words "duty" or "obligation" are best used to express the requirements of a lessee in performance of the implied covenants.

*Amoco Production Co. v. Alexander,* 622 S.W.2d at 567. Appellant's final point is overruled.

The judgment of the trial court is AFFIRMED.