BUTLER J. SEEDMAN vs. LOUIS JAFFER ET AL.

First Judicial District, Hartford, January Term, 1926.
WHEELER, C. J., CURTIS, KEELER, MALTBIE and BANKS, Js.

A bailment involves delivery of the thing bailed into the actual or constructive possession of the bailee, under a contract to return it to the bailor according to the terms of the agreement.

In August, 1920, the defendants, with the knowledge of the plaintiff, expected to secure a contract for the construction of a garage, and to sublet the erection of the steel framework to the plaintiff. As a preliminary preparation, the defendants engaged the plaintiff to unload the steel from wagons on to a vacant lot, where

Seedman *v.* Jaffer.

he was to sort it according to the floor plans of the building; and, in addition to the agreed compensation for these services, the defendants promised to pay the plaintiff the rental ($15 per week) of a derrick which he was obliged to hire in order to remove the steel from the wagons. On October 4th, the delivery of the steel commenced and for two or three weeks thereafter, the plaintiff continued the work of unloading and sorting, during which time, instead of following the customary method of weighing down the derrick with such materials as stones or cement, he piled around it and upon its sills a quantity of steel—a device which he adopted without authority from the defendants and solely for his own convenience. On or about November 1st, the entire project for the erection of the garage was abandoned by the owner. Thereafter, the defendants repeatedly requested the plaintiff to remove the derrick from the lot, but the plaintiff replied that he was unable to do so because it was necessary first to remove from its lower portions the steel which had been piled upon it. This situation continued until April, 1924, when the plaintiff carried away only the upper portions. The present action was brought to recover the rental of the derrick; and the trial court rendered judgment for the plaintiff to recover $15 per week for the entire period that the derrick was on the lot. *Held:*

1. That there was no contract of bailment between the parties with reference to the derrick, but rather an agreement for the plaintiff's services in unloading and sorting the steel, with a provision for additional compensation to cover the rental of the derrick.

2. That it was the plaintiff's duty to remove the derrick from the lot and, so far as it became necessary to accomplish this, to remove the steel from the lower portions of the derrick.

3. That the trial court's judgment was erroneous, since the plaintiff was entitled to recover the rental of the derrick only for a period extending from the date when he hired it to the date, after the abandonment of the building plans, when he reasonably should have removed it from the lot.

Argued January 6th—decided February 23d, 1926.

ACTION to recover the agreed rental of a derrick, brought to the Superior Court in Hartford County and tried to the court, *Haines, J.;* judgment rendered for the plaintiff for $2,775, and appeal by defendants. *Error, judgment set aside and new trial ordered.*

*Isaac Nassau,* with whom, on the brief, was *Francis P. Rohrmayer,* for the appellants (defendants).

*John J. Burke,* for the appellee (plaintiff).

WHEELER, C. J. The defendants were engaged in the structural steel business, and in August, 1920, interested in the erection of a proposed garage for the Hartford Automobile Club Garage Company, which required in its erection a large quantity of steel, and this the plaintiff knew. The steel was to come to the railroad freight-yards in Hartford and to be carted in wagons by defendants, at their own cost, to a vacant lot one hundred and fifty feet square, provided by them, and the steel there sorted and made ready for erection. Early in August defendant Jaffer requested plaintiff, who was in the steel erection business, to submit bids for the erection of the steel on the building site of this garage. Late in September, 1920, the defendants engaged the plaintiff to remove the steel from the wagons in which they were to bring it to the lot, place it thereon, and sort it by floors. For the removal of the steel from the wagons a derrick was required to be set up on this lot, and defendants requested plaintiff to hire one, which he did, they agreeing to pay the rental for the same, which was $15 per week. Both the procuring and the setting up of the derrick were done by the plaintiff at the request of the defendants and the expense of the setting up borne by them. The derrick was set up on September 30th, 1920; at this time no steel had been brought to this lot. Delivery of it began on October 4th, 1920. The plaintiff used the steel beams he was unloading to weigh down the sills of the derrick and piled steel around the derrick in the expectation that by the time the derrick was to be returned to its owners the steel would have been

removed from the lot. The defendants were to have removed the steel from the lot as it was needed for erection. The contract for the erection of the steel had not, on October 4th, 1920, been awarded to the plaintiff, but he began the sorting on that day upon the assurance that he would receive the erection contract later. He continued the work of sorting the steel for two or three weeks, when the project of erecting the garage collapsed. The plaintiff knew of this and did no further sorting. In consequence of the collapse of the building project, the defendants never removed any of the steel from the lot, but it continued to remain where it had been placed and sorted by the plaintiff. The removal of the entire derrick could only be accomplished by first removing the steel placed around the derrick to weight it, although its upper portions could be removed without removing the steel. Shortly after plaintiff ceased sorting, the defendant Jaffer requested him to remove the derrick, but plaintiff explained that this could not be done without first removing the steel which was around it. The derrick remained on the lot until April 17th, 1924, with the knowledge of the defendants, and with no effort on their part to remove it, except to repeat their request to plaintiff to remove it. On April 17th, 1924, plaintiff removed the upper portions of the derrick. At regular intervals plaintiff sent defendants a bill for the accruing weekly rental at $15 per week. The rental which defendants had agreed to pay plaintiff for the use of the derrick was entirely distinct from their agreement of payment for his services in sorting. The defendants have never paid any portion of the rental due for the derrick.

The question underlying the extent of the plaintiff's recovery is, what relation did the plaintiff bear to this derrick? The facts found prevent our holding that

this relationship was that of a bailment. The terms of the contract between the defendants and plaintiff do not sanction a holding that the plaintiff was the bailor and the defendants the bailees of the derrick. At least one element essential to a bailment is absent—the delivery of the derrick into the possession of defendants, either actual or constructive. We say in *Murray* v. *Paramount Petroleum & Products Co., Inc.,* 101 Conn. 238, 242, 125 Atl. 617: "The rule in such cases is founded on the nature of a bailment, which involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement." See also 1 Swift's Digest (Revised Ed., 1874) side page 386; Van Zile on Bailments & Carriers (2d Ed.) p. 15, § 18.

The plaintiff procured the derrick, set it up, and operated it without the control, supervision, criticism, or comment of the defendants. The defendants had nothing whatsoever to do with the setting up, operation, or care of the derrick, nor, so far as appears of record, were they the owners, or in possession of, the vacant lot upon which the steel was placed, nor of the steel, nor did they give any direction as to the lot, the steel, or the manner in which the plaintiff should do his work otherwise than is found in the terms of the contract made. The appellants' counsel does not claim that the relationship of the parties to the derrick was that of bailment, and the trial court did not decide the case upon this basis. We may, in view of this, leave the point without further consideration.

The contract as first made was a contract made by defendants with plaintiff for his services in sorting the steel which defendants were to bring in wagons to this vacant lot, and in unloading and placing it on the lot, for a consideration. Defendants also requested the plaintiff to hire a derrick with which to remove the

steel from the wagons, and upon plaintiff's hiring the derrick defendants agreed to pay the rental for it, which was $15 per week. The contract was thus one for services, with additional compensation for the rental of the derrick. Neither party appears to have been responsible in any degree for the abandonment of this building project by the owners. It was merely a happening of the business. Had the derrick been set up so that it could have been removed by ordinary effort after the termination of the work, it would not have been the duty of the defendants to have moved it from this lot and delivered it elsewhere to plaintiff. An express agreement as to that matter was not made by the parties; the trial court has found no implied agreement, and the facts found do not authorize us to imply one as matter of law. Under the same conditions we might fairly imply from the facts found that the parties intended that the plaintiff should himself remove it; he rented it, brought it to the lot, set it up, and used it in performing the services called for by his contract with defendants; and when defendants requested him to move it, his answer was, not that it was their duty to do so, but that he could not remove it because of the steel that was piled about it; long afterward he finally did take away its upper portions. If, then, the plaintiff was bound to remove the derrick, under all ordinary conditions was he bound to remove the steel which weighted it, and the steel which was piled around it, preventing its removal until the steel had been removed, or was it the duty of the defendants to have removed this steel? So far as appears, the defendants never authorized the plaintiff to weight the derrick with the steel, or to pile it around the derrick. The plaintiff did this upon his own judgment, and obviously to convenience himself in the work he was doing upon this lot which, it must be remembered,

was one hundred and fifty feet square. One of the paragraphs defendants claim the trial court erred in failing to find we do not regard as essential to the conclusion we reach in this case, but since it is enlightening in disclosing plaintiff's purpose in weighting the derrick and piling the steel about it and was supported by the evidence, we add it to the finding. No doubt the trial court failed to do this through its belief that it was unimportant. "Paragraph 13a. In erecting a derrick, it is customary to weigh down the sills thereof with ordinary weights such as cement, bags, stones, and broken stone, but not steel." This falls far short of establishing the impropriety of plaintiff's doing this in the way he did. But it does, in connection with the other facts, reveal his purpose to have been to serve his own convenience. The plaintiff supposed that by the time the derrick was to be returned to its owners the steel would be entirely off the lot. The finding is not explicit upon the point, but it may fairly be interpreted to say that the duty was upon the defendants to remove the steel from the lot either as the sorting progressed or upon its completion. The defendants never removed any of it, in consequence of the collapse of the building project, for which, as we have observed, they were not responsible. The trial court says in its memorandum: "It is quite possible that this use of the steel to support the derrick was poor judgment upon the part of the plaintiff or even a careless disregard of the possibility that the defendants might not move the steel." If the plaintiff erred in judgment, or acted with a careless disregard of what was liable to happen through many causes, his error in judgment or careless conduct cannot impose a liability upon the defendants. What plaintiff did was to rely upon his own diagnosis of what would be done. His conduct was a hazard of his service of his own making.

Richard *v.* New York, N. H. & H. R. Co.

That it would have been defendants' duty, in case the building contract had gone on, to move the steel from the lot, has no relation to their duty to pay rental for the derrick, which was held upon the lot because plaintiff, for his own convenience, had weighted it with the steel and piled it about the derrick so that it could not be moved without first removing the steel, and this he neglected and refused to do. What he is entitled to recover is rental at the rate of $15 a week from the time he hired the derrick, September 30th, 1920, to the time when the building project was given up, which was on or about the following November 1st, and for the period thereafter reasonably required in which to move the steel so that the derrick could have been removed, and to have then removed the derrick and restored it to its owners. The finding does not state what such reasonable time would have been. Without such finding we are unable to determine it.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred, except MALTBIE, J., who dissented.