LILLIAN S. CLARK, ADMINISTRATRIX (ESTATE OF FRED D. CLARK) v. HASKEL ROSEN.

MALTBIE, C. J., AVERY, BROWN and JENNINGS, JS.[1]

Argued June 12—decided June 26, 1940.

[1] By agreement of counsel the case was argued before and decided by four judges.

*Frank H. Foss* and *Irwin I. Krug,* for the appellant (defendant).

*John B. Harvey,* for the plaintiff (appellee).

MALTBIE, C. J.   Fred D. Clark, and, after his death, the plaintiff as administratrix of his estate under an order of the Court of Probate authorizing her to continue the business, received from the defendant certain lots of chickens to be fed and cared for by them respectively and sold by the defendant under written agreements applicable to each lot of chickens so delivered.   Each of these agreements recites the receipt of a certain number of chickens, property of the defendant, which he had purchased.   They then provide that the chickens should remain his property; that Clark or the plaintiff should raise and take care of them until they became broilers and then surrender them to the defendant on his demand; that when they were sold by him in New York he should retain an amount representing the cost of the chickens and three cents a pound for transportation and commission fee, in addition to any money he had advanced for raising them; that the surplus should then be paid to Clark or the plaintiff; and that in the event of a deficit rather than a surplus Clark or the plaintiff should be indebted to him for the amount of that deficit.   The agreements conclude with a statement that the essence of the agreement is that the chickens should remain at all times the defendant's property and that he should have a right to demand them at his option and to enter the premises to take and remove them.

Under this agreement the defendant delivered several lots of chickens to Clark and another lot to the plaintiff after his death. Most of the chickens were subsequently sold by the defendant and various sums remitted to Clark and the plaintiff. In the latter part of September, 1938, a violent and unprecedented hurricane destroyed a considerable number of the chickens in the possession of the plaintiff. Some were, however, saved and these were sold by the defendant, but no money was remitted to the plaintiff on account of them. The plaintiff claimed a recovery of the amount received by Rosen for these chickens less his commission. The defendant claims that a statement of the full account between the parties results in a small balance due to him. He arrives at this result by deducting from the total amount received by him on the sale of all the chickens, not only his commission, but all money spent by him in purchasing them. The effect of this would be to subject the plaintiff to payment of the amount spent by the defendant in purchasing the chickens which were destroyed by the hurricane, and the specific issue is whether he is entitled to that deduction.

The agreements established the relation of bailor and bailee between the defendant and the Clarks. *Murray* v. *Paramount Petroleum & Products Co., Inc.,* 101 Conn. 238, 242, 125 Atl. 617; *Douglass* v. *Hart,* 103 Conn. 685, 688, 131 Atl. 401; *Seedman* v. *Jaffer,* 104 Conn. 222, 226, 132 Atl. 414. There is no claim that the Clarks were negligent in the way in which they acted or that they committed any unauthorized acts in dealing with the chickens or in any other way were guilty of misconduct which would subject them to liability as bailees. Apart from some provision in the contract, they would not be liable to the defendant for the loss of the chickens destroyed

by the hurricane. *Allen* v. *Somers,* 73 Conn. 355, 47 Atl. 653; 8 C. J. S. 262. Nor does the contract impose any such liability upon them; it specifically provides that "when such broilers are sold" by the defendant he is to retain the amount of money representing their cost to him, his commission and any advances made for raising them; the agreement presupposes the sale of the chickens before the defendant becomes entitled to a return of the money spent by him in their purchase. The word "deficit" in the agreement, particularly when considered in conjunction with the word "surplus," evidently refers to a situation where the chickens were sold for less than the sums the defendant was entitled to retain. The court has not found whether the transactions constituted a continuing business or each delivery of chickens was a separate transaction. If the former, the rights of the parties would be determined upon the basis of the total amounts received by the defendant from the sale of chickens less the money spent by him to purchase those which were sold, excluding those destroyed by the hurricane, his commissions and any sums he had advanced to the Clarks; if each delivery of chickens is to be regarded as a separate transaction, the same method of computation would be followed as regards each lot of chickens placed with them.

The trial court gave judgment for the amount received on the sale of the last lot of chickens sold, those which were saved from the hurricane, less the defendant's commission. Upon this record there is no way in which judgment for that amount can be sustained, because it is not found, nor are we asked to correct the finding to state, how many chickens were destroyed by the hurricane. Lacking that element in the case, it cannot be determined how much the defendant was entitled to retain as the cost to him of the chickens

which he purchased and ultimately sold, exclusive of those destroyed by the hurricane.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.