Plaintiff is the administrator of the estate of Bessie S. Samelson who died in July, 1953, before this action was brought. As such administrator, he seeks to hold the defendant liable as bailee for the loss of a mink jacket under circumstances hereafter stated. The amended complaint contains two counts as the alleged basis of the defendant's liability, the first being for breach of a contract of bailment and the second for negligence.
Defendant is engaged in the business of storage of fur coats. By way of answer it admits the relationship of bailor and bailee between Mrs. Samelson and it in reference to a mink jacket but disclaims liability for its loss. The scope of a special defense relating to damages will be considered later.
The following facts are either undisputed or find support in the evidence as a whole: In early May, 1953, Mrs. Samelson telephoned the defendant's place of business and stated that she had furs to be put in storage. On May 9 the defendant sent one of its employees by the name of Fuller to her home to pick up the subject of storage. There was turned over to him a mink jacket and a Persian lamb muff. He gave separate receipts for each item and retained duplicate receipts. The storage charge was paid by Mrs. Samelson. On October 6, 1953, following Mrs. Samelson's death, her sister went to the defendant's place of business and presented the two receipts to retrieve the furs on behalf *Page 39 
of the estate. Defendant had the corresponding receipt in its files for the Persian lamb muff but did not have the corresponding receipt for the mink jacket. Only the muff was in storage. An extensive search disclosed that the mink jacket was not in storage or elsewhere on the premises. Fuller had been in the defendant's employment on a temporary basis for five or six weeks prior to May 9, 1953. He left that employment the following week and his present whereabouts are not known. That he stole the mink jacket was conceded by the defendant at the trial. His honesty was never in question until the disappearance of the jacket was brought to light. Whether Fuller committed the act of larceny immediately following the securing of possession from Mrs. Samelson or after bringing the jacket to the defendant's place of business is a matter of conjecture. There is no record of the jacket or its duplicate receipt ever having been turned over by him to the defendant.
The defendant's liability to the plaintiff under the first count of the amended complaint for breach of the contract of bailment does not appear to be open to serious argument. A bailment — and the defendant concedes that the mink jacket was the subject of such between Mrs. Samelson and it — is defined as "`a delivery of goods in trust, upon a contract, express or implied, that the trust shall be duly executed, and the goods restored by the bailee, as soon as the purpose of the bailment shall be answered.'"Zeterstrom v. Thomas, 92 Conn. 702, 704; and see 6 Am. Jur. 117, § 4. To paraphrase in application a statement of principle appearing inMiller v. Viola State Bank, 121 Kan. 193, 195, 48 A.L.R. 373: Fuller's duty to the defendant, his employer, was to care for the mink jacket — to handle it in such manner that it would be forthcoming when demanded. He did not do this. He handled it so *Page 40 
that its return by the defendant became impossible. He violated his obligation to the defendant, and at the same time the defendant through him violated its obligation to Mrs. Samelson and her estate. The defendant is liable not because Fuller committed a crime, but because he failed in the duty which as the representative of the defendant he owed Mrs. Samelson and her estate.
The defendant's liability to the plaintiff under the second count of the amended complaint for negligence presents a more complex question. The failure of the defendant as bailee to return the mink jacket raised the presumption that its nonproduction was due to negligence on its part. And this was ample to make out a prima facie case. Anderson
v. Gengras Motors, Inc., 141 Conn. 688, 691, and cases cited. But the plaintiff was not content to rest upon the presumption accorded him. Apart from the defendant's concession at the trial that Fuller stole the mink jacket, the plaintiff attempted to prove affirmatively that the defendant was negligent in its supervision over him and over its files and storage vault. When and where Fuller misappropriated the mink jacket cannot be determined. Since the plaintiff undertook affirmatively to make out liability for negligence on the part of the defendant, the burden of proving that the theft by Fuller was the result of negligence on the part of the defendant was assumed by the plaintiff. Theft by Fuller in and of itself is not proof of negligence on the part of the defendant. Firestone Tire Rubber Co. v.Pacific Transfer Co., 120 Wash. 665, 670, 26 A.L.R. 217. Furthermore, the responsibility of the defendant as a bailee was not that of an insurer. AetnaCasualty Surety Co. v. Poppel Sons ServiceStation, Inc., 142 Conn. 598, 605; Zappone v. Kirk,15 Conn. Sup. 451, 454. The plaintiff has not proved any negligence on the part of the defendant giving *Page 41 
rise to Fuller's theft. Hence liability of the defendant for provable damages attaches only under the first count of the amended complaint. Damages will now be considered. The determination of such gives rise to another controversial question.
The mink jacket was bought by Mrs. Samelson in New York City in 1950 for the sum of $2580. It is found to have had a value of $2155 on May 9, 1953. The defendant has interposed a special defense to the effect that its liability, if any, is limited to $100 under the storage receipt. The receipt given by Fuller to Mrs. Samelson on May 9, 1953, bears her signature. It is on the defendant's form and otherwise contains Fuller's insertions such as date, type of garment and insurance valuation. The latter is entered at $100 and total charge of the defendant at $3. A printed provision in bold type appearing on the face of the receipt directly above Mrs. Samelson's signature, reads: "For any changes in valuation or repairs notification must be received within five days. I acknowledge and accept the charges as above subject to conditions on reverse side." Condition No. 9 on the reverse side, in smaller print, reads: "Storage and insurance charges are based upon valuation herein declared by the depositor and amount recoverable for loss of or damage to the article shall not exceed its actual value or the cost of repair or replacement with material of like kind and quality or the depositor's valuation appearing in this receipt, whichever one of those amounts is least." An official of the defendant testified that in accepting articles for storage its employees were instructed to have the customer declare the insurance valuation; that the charge to the customer for storage of an article involved two elements, namely, rent for the physical space occupied by the article and insurance upon the value declared by the customer. He testified further that the defendant was concerned with the value *Page 42 
declared only to the extent that the higher the declaration the greater the charge to the customer to compensate for the increased insurance coverage required; and that when the customer had an insurance policy of her own on the article, the usual declaration of value by the customer was in the amount of $100 to minimize her cost to the defendant. The court is of the opinion that Mrs. Samelson was in no way precluded by Fuller in declaring a value greater than $100. She signed the receipt in the form described, and did so directly under that provision which in bold type states that any changes in valuation were to be made within five days. She was given the original of such receipt, which she or her estate held until presented many months later.
On the ground of public policy the declared Connecticut rule is that a bailee cannot limit his liability by special contract so as to be relieved against his own negligence. Malone v. Santora, 135 Conn. 286,293. However, in the case at bar the imposed limitation is referable only to what purports to be a stipulation as to the agreed value of the subject of the bailment. In 6 Am. Jur. 304, § 186, appears this statement of the law: "[A] bailee for hire [as was the defendant], without contravening the principle that he cannot contract for exemption or limitation from liability on account of his own negligence, may, by reasonable provisions, contract to limit his liability to an agreed value of the article received, provided the rate charged is based, bona fide, upon the value of the article and the stipulation does not amount to a mere arbitrary limitation designed to apply in all cases."
It is found that the declared value of the mink jacket was that made by Mrs. Samelson. The amount was not an arbitrary sum fixed in advance by the defendant, as appears in Nothnagle v. New York,N.H. H.R. Co., 139 Conn. 278, 280. It was open to *Page 43 
discussion and could have been revised within five days thereafter. Moreover, Mrs. Samelson signed the receipt directly under the provision appearing in bold type as described. In doing so she accepted all terms and conditions. See Ursini v. Goldman,118 Conn. 554, 562. That the mink jacket actually had a value out of proportion to that declared is unfortunate but should not alter the provisions of the receipt. For all that appears, Mrs. Samelson was her own free agent to set any value by way of declaration with a specified period given her for revision of declaration. There is nothing in the evidence to suggest that Fuller on this aspect influenced Mrs. Samelson to the detriment of her interest. But there is a compelling inference that the lady was motivated by a desire to minimize cost to herself since a higher declaration of value would have resulted in an increased charge owing to the defendant for storage and insurance.
Further discussion is not required other than to say that the special defense of the defendant as to the amount of damages recoverable is sustainable. The issues are found for the plaintiff on the first count of the amended complaint, and for the defendant on the second count thereof. Damages awarded to the plaintiff under the prevailing count are limited to $100 in view of the sustained special defense.
 Judgment will so enter, with costs to the plaintiff as an incident.