[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is presented to the court upon written briefs and a stipulation of facts. The issue is a simple one; whether or not a bailment was created by the plaintiff's delivery of material to Bridgeport Rollings Mills Co.-Brimco. Resolution of the question is another matter due to the rather unusual manner in which the business of the parties was conducted between them.
The facts as stipulated to, suggest the following to the court after consideration. The plaintiff was engaged in manufacturing of jewelry items out of metal; mainly copper and brass. One of the byproducts was scrap metal which had value, if reconstituted. Brimco operated a facility in Bridgeport. Connecticut which engaged in processing such scrap obtained from the plaintiff and others engaged in manufacturing items from these metals.
Mechanically whenever a sufficient quantity of metal was accumulated by the plaintiff, Brimco would arrange to pick it up at the plaintiff's factory and it would be transported to Bridgeport where it, along with the scrap from other manufacturers, would be reprocessed into flat stock or wire rolls. The plaintiff, as its needs arose, would then order flat sheets of metal from Brimco and use them to stamp out CT Page 127 jewelry cases, or whatever, thus completing the circle. Other manufacturers would follow the same process and it is clear that while the plaintiff might get back all or some part of the material it delivered to the defendant, this would be solely by chance and it was not so intended by the parties who realized that each of their deliveries, so far as the stipulated facts set out, would be mixed among those other customers of Brimco who were likewise engaged in similar arrangements.
Financially, upon receipt by Brimco of a load of scrap, it would be recorded as to its copper and zinc content and this would be recorded in terms of pounds in a "Toll Metal Account." As the amount of metal accumulated to a point where the plaintiff's anticipated needs resulted in a present surplus, Brimco would purchase the metal at prevailing market rates by crediting the plaintiff's account. Of course, Brimco charged a fee initially for converting the scrap into usable forms of sheets and rolls. Monthly accountings of the plaintiff's balance were furnished to the plaintiff in terms of pounds of metal remaining in the plaintiff's account.
This relationship and process continued without incident until June 1987 when the defendant Citytrust, by lawful process as a creditor, took possession of Brimco's assets, including the scrap metal on the premises. The plaintiff's account at that point amounted to a value of $90,000. The plaintiff then ascertained that Citytrust had, for a period of time during the course of the plaintiff's dealings with Brimco, been advised by Brimco that the scrap metal of the premises of Brimco was considered by Brimco to be among the assets of Brimco and, in fact, were pledged by Brimco to the defendant as security for a revolving line of credit.
The plaintiff sues to recover the value of its account from the defendant, claiming that the material delivered to Brimco was by way of a contract of bailment with retention of title by the plaintiff and was not a sale, as claimed by the defendant, which would place the plaintiff in the position of simple being a general creditor of Brimco, now in bankruptcy. If the former is the correct determination of the relationship between the plaintiff and Brimco, the plaintiff would be entitled to recover the value of the assets taken by Citytrust which, at that time, belonged to the plaintiff. The action before the court is then framed in terms of a conversion of plaintiff's property by the defendant, for which the plaintiff claims damages.
A bailment involves the delivery of the thing bailed into the possession of the bailee, under a contract to CT Page 128 return it to the owner according to the terms of the Agreement. Seedman v. Jaffer, 104 Conn. 222, 226. Rokosa v. Hartford Jai Alai, Inc., 37 Conn. Sup. 620, 622. A bailment is a consensual relationship. Pinto v. Bridgeport Mack Trucks, Inc.,38 Conn. Sup. 639, 641. In this case there was no understanding or agreement that the precise thing bailed would be returned to plaintiff but this alone may not convert the delivery from a bailment to a sale.
In 8 Am. Jr. 2 Bailments Sec. 33 it is noted that when by the express or implied agreement of the parties the property is to be returned either in the same form or in an altered form (underlining mine) or where the article is to be duly accounted for in accordance with the terms of the agreement, the general rule is that the contract is one of bailment, not of sale, and the title to the property is not changed. Conversely, the transaction becomes a sale and the title changed when the receiving party is at liberty to return either the specific article or account for it. In this case the receiver becomes a debtor to make the return.
The fact that the property of the plaintiff is comingled with like property of another, according to the agreement and understanding of the parties, does not necessarily force the conclusion that the transaction is not a bailment. In Public Electric Service and Gas Co. v. F.P.C., 371, F.2d 1, [371 F.2d 1], 4, Mansfield, J., noted that "where comingling is required by the needs of the trade, and if done with the consent of the parties, a bailment is established if that is the intent of the parties." That case involved the transport of gas through a pipeline, owned by an independent party, to a facility operated by the owner of the gas. The gas was delivered to the transporter in a specific amount and the owner then was delivered an identical amount of gas at the far end. The same gas that was delivered was understood not to be the gas that was delivered or the same gas that was accepted for transport but rather was considered to be fungible goods. It nonetheless remained the property of the owner and did not alter the characterization of the delivery as a bailment. The same conclusion has been reached in cases of grain storage elevators where one party's grain is identical to another and comingled for storage. So long as a depositor may demand the return of the like kind and quantity, the transaction has been regarded as a bailment.
It appears from the facts agreed to between the parties (Item 25), that the plaintiff was not aware that Brimco was treating the scrap in its possession as an asset of Brimco. It also appears from Exhibits D and F that accountings or statements as to the amount of metal in pounds that Brimco owed the plaintiff were periodically furnished to the plaintiff. CT Page 129
The court concludes that in the factual scenario as presented, it has not been demonstrated by a preponderance of the evidence that the plaintiff, by its delivery of scrap metal to Brimco, engaged in a transaction that can be construed as anything more than a bailment. The continuing transactions between the parties appear, on balance, to comport with the definition of a bailment as set out in Seedman, cited supra. While there was not as clear a reservation of ownership as described in General Motors Corp. v. Bristol, 690 F[2] 26 or in In Re Sitkin Smelting Refining Inc., 639 F[2] 1216, there is nothing on the part of the plaintiff's conduct to suggest that ownership of the scrap was simply, by shipment to Brimco, intended to be transferred to Brimco. As to the claim of the defendant that shipment to Brimco by a straight bill of lading is indicative of title resting in Brimco, a bill of lading may be evidence of ownership of goods in the consignee but it is only a presumption and it is permissible to demonstrate that it was not the intention of the parties to vest title in the consignee. 13 Am. Jur. 2 Carriers Sec. 279.
Accordingly, the court finds the allegations of the plaintiff's complaint to have been proven and finds that the plaintiff is entitled to recover from the defendant the sum of $114,575.00, said amount being that as set out on page 12 of the plaintiff's Memorandum of February 7, 1990, together with costs.
George W. Ripley, J.