B. A. BALLOU AND COMPANY, INC. *v.* CITYTRUST
(14178)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued February 20—decision released May 21, 1991

*Richard J. Buturla,* for the appellant (defendant).

*Samuel B. Feldman,* with whom, on the brief, was *Donna M. Case-Rossato,* for the appellee (plaintiff).

COVELLO, J. This is an action in conversion. The plaintiff, B. A. Ballou and Company, Inc., alleges that the defendant, Citytrust, wrongfully appropriated the plaintiff's scrap metal while it was in the possession of a third party, Bridgeport Rolling Mills Company. The issues on appeal are: (1) who has the burden of proving whether a bailment exists; (2) whether under the circumstances presented a bailment existed; and (3) whether damages for conversion were properly calculated. We conclude that (1) the burden of proving a bailment lies with the party whose claim to ownership relies upon such a relationship, and (2) no bailment existed here.[1]

The parties stipulated as follows: the plaintiff B. A. Ballou and Company, Inc. (Ballou), manufactures jewelry. Bridgeport Rolling Mills, Inc. (Brimco), was a metal fabricator. Brimco supplied Ballou with sheets of stock brass, an alloy that Ballou used to manufacture jewelry.

---

[1] Because we conclude that no bailment existed, we do not address Citytrust's claim that damages were not properly calculated.

Ballou shipped its leftover brass back to Brimco, which commingled it with scrap brass received from other companies. Brimco then shipped the accumulated scrap to a processing mill, which added new base metal as required and reconstituted it into finished brass that Brimco thereafter kept in its inventory available for subsequent orders. The type of brass needed by a given customer varied from time to time and therefore the new brass returned to the customer by Brimco could have an entirely different composition than the scrap sent by the customer. For example, Brimco might receive brass scrap composed of 70 percent copper and 30 percent zinc and return brass composed of 85 percent copper and 15 percent zinc. The only record of the brass sent by Ballou to Brimco was a "toll metal account" that listed the weight of each base metal in a given customer's account. Because Brimco commingled the scrap metal and had it remanufactured by a third party who mixed it with new metal as needed, there was no way of determining whether any of the same scrap sent to Brimco by Ballou ever returned to Ballou as finished brass.

On May 22, 1981, Brimco entered into a security agreement with the defendant Citytrust for a revolving line of credit. The loan was secured by an interest in "[a]ll inventory of the Borrower, now owned or hereafter acquired . . . . All goods . . . or other property . . . in which Borrower has an interest . . . or come[s] into possession." Unknown to Ballou, Brimco consistently represented to Citytrust that it owned all the scrap metal in its possession. In June, 1987, Citytrust, as a secured creditor, took possession of Brimco's assets pursuant to the security agreement, including all metal on site.

Ballou thereafter brought an action against Citytrust for its alleged conversion of Ballou's scrap metal and

for violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court concluded that Ballou had retained title to the scrap and that a bailment therefore existed. It accordingly rendered judgment for Ballou in the amount of $114,575. Citytrust appealed, claiming that the trial court (1) incorrectly concluded that a bailment existed, (2) improperly shifted the burden of proof to Citytrust to prove that a bailment did not exist, and (3) improperly calculated the damages. We transferred the appeal to this court in accordance with Practice Book § 4023.

Citytrust first claims that the trial court improperly placed the burden of proving a necessary element of Ballou's case upon Citytrust. In order for Ballou to prevail on its conversion claim, it must demonstrate that it continued to own the scrap. *Gilbert* v. *Walker,* 64 Conn. 390, 394, 20 A. 132 (1890). Since Brimco had possession, Ballou was required to prove the existence of a bailment. It is an " 'elementary rule that whenever the existence of any fact is necessary in order that a party may make out his case . . . the burden is on such party to show the existence of such fact.' " *Nikitiuk* v. *Pishtey,* 153 Conn. 545, 552, 219 A.2d 225 (1966); *Eichman* v. *J & J Building Co.,* 216 Conn. 443, 451, 582 A.2d 182 (1990). This rule holds true for bailment cases as well. See *Wells* v. *Active Automobile Exchange, Inc.,* 99 Conn. 523, 527, 121 A.883 (1923); C. McCormick, Evidence (3d Ed.) § 337; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 4.2.1. While the trial court arguably assigned the burden of proof of this issue to Citytrust we need not take up Citytrust's claim in this regard because we find that, under the facts as stipulated, a bailment could not have existed.

Ballou claims that the toll metal account between itself and Brimco constituted a bailment. Ballou argues

that, as a bailor, it retained title to the scrap metal in Brimco's possession and that Citytrust therefore became liable to it in conversion for seizing its scrap.

A bailment " 'involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement.' " *Seedman* v. *Jaffer,* 104 Conn. 222, 226, 132 A. 414 (1926), quoting *Murray* v. *Paramount Petroleum & Products Co.,* 101 Conn. 238, 242, 125 A. 617 (1924).[2] "A relationship of bailor-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions." *Maulding* v. *United States,* 257 F.2d 56, 60 (1958). "In bailment, the owner or bailor has a general property [interest] in the goods bailed . . . ." *McKesson & Robbins, Inc.* v. *Walsh,* 132 Conn. 158, 162, 42 A.2d 841 (1945). The bailee, on the other hand, has mere possession of items left in its care pursuant to the bailment. *Sturm* v. *Boker,* 150 U.S. 312, 330, 14 S. Ct. 99, 37 L. Ed. 1093 (1893).

---

[2] According to Blackstone, and others, a bailment "is a delivery of goods in trust, upon a contract, expressed or implied, that the trust shall be faithfully executed on the part of the bailee." 2 Blackstone's Commentaries p. 452; see I. Edwards, A Treatise on the Law of Bailments p. 33; Black's Law Dictionary (4th Ed.). At one time we also adhered to this definition. *Zeterstrom* v. *Thomas,* 92 Conn. 702, 704, 104 A. 237 (1918); *Samelson* v. *Harper's Furs, Inc.,* 20 Conn. Sup. 37, 39, 120 A.2d 419 (1955), aff'd, 144 Conn. 368, 131 A.2d 827 (1957). In a trust, however, the trustee has legal title to the res of the trust. G. Bogert, Trusts (5th Ed.) § 1. In a bailment, on the other hand, the bailee does not have legal title to the thing bailed, but mere possession. *Sturm* v. *Boker,* 150 U.S. 312, 330, 14 S. Ct. 99, 37 L. Ed. 1093 (1893); *McKesson & Robbins, Inc.* v. *Walsh,* 132 Conn. 158, 162, 42 A.2d 841 (1945). We prefer, therefore, the definition established in *Seedman* v. *Jaffer,* 104 Conn. 222, 226, 132 A. 414 (1926). See generally 1 Restatement (Second), Trusts § 5; A. Dobie, Handbook on the Law of Bailments and Carriers § 1.

The trial court found that scrap from Ballou had been commingled with scrap from other sources and concluded that "[t]he fact that the property of the plaintiff is commingled with like property of another . . . does not necessarily force the conclusion that the transaction is not a bailment."[3] We agree that the commingling of fungible goods alone does not defeat a bailment when the bailor specifically intended to retain ownership of a known share of the commingled goods. *Public Service Electric & Gas Co.* v. *FPC,* 371 F.2d 1 (3d Cir.), cert. denied, 389 U.S. 849, 88 S. Ct. 33, 19 L. Ed. 2d 119 (1967); *Slaughter* v. *Green,* 22 Va. 3, 9 (1821).

---

[3] The trial court relied primarily upon *Public Service Electric & Gas Co.* v. *FPC,* 371 F.2d 1 (3d Cir.), cert. denied, 389 U.S. 849, 88 S. Ct. 33, 19 L. Ed. 2d 119 (1967). In *Public Service Electric & Gas Co.,* a company arranged to have gas transported through a pipeline. The court found that a bailment existed even though the company was by no means entitled to have the identical gas delivered back to it. Id., 4. Because the gas was only transported, and not altered in any form, that case is distinguishable from the type of bailment alleged here.

The trial court also cited *In re Sitkin Smelting & Refining, Inc.,* 639 F.2d 1216 (5th Cir. 1981). In *Sitkin,* the court found that a bailment existed when Kodak delivered film waste to Sitkin for waste processing and to extract the silver. Id., 1217. The court emphasized the facts that: (1) Sitkin did not carry the film as inventory; (2) the film was clearly imprinted with Kodak's name; and (3) the film was stored in its original cartons and kept separate from other products. Id. *Sitkin,* therefore, is distinguishable from the present case because there was no evidence of commingling.

The trial court also relied upon *General Motors Corporation* v. *Bristol,* 690 F.2d 26, 30–31 (2d Cir. 1982), in which Judge Mansfield, in a concurring opinion, found that a bailment existed when GM Corporation shipped scrap metal to a manufacturer for processing into alloy strips under a "tolling arrangement." In *Bristol,* however, the written agreement clearly stated that GM Corporation retained title to the scrap in the manufacturer's possession until it was remanufactured into alloy. Id., 27. In addition, the bailee was required to return the identical scrap to GM Corporation if not processed into alloy strips. Judge Mansfield, concurring in *Bristol,* stated that a bailment may exist when goods are commingled *and* remanufactured. As support for this statement, however, he cites *Public Service Electric & Gas Co.* v. *FPC,* supra, and 8 Am. Jur. 2d, Bailments § 51. As noted above, *Public Service Electric & Gas Co.* stands only for the proposition that commingling alone does not defeat a bailment.

A different rule, however, applies where the purpose of the bailment is to alter or remanufacture goods surrendered to the alleged bailee. The bailment in such an instance is termed "a bailment . . . locatio operis faciendi [i.e.] a bailment where work and labor . . . are to be performed upon the thing delivered to the bailee. The parties to a bailment of this character—one for their mutual benefit—enter into a contract, express or implied, or both, by which the bailee engages to perform the agreed services and return the thing bailed in its altered . . . form, and the bailor in return for the services of the bailee agrees to pay him the agreed-upon compensation." *Douglass* v. *Hart,* 103 Conn. 685, 688, 131 A. 401 (1925).

In a bailment of this type, "the question of [whether a transaction constitutes a] bailment or not is determined by whether the *identical article delivered* to the manufacturer is to be returned to the party making the advance. Thus, where logs are delivered to be sawed into boards, or leather to be made into shoes, rags into paper, olives into oil, grapes into wine, wheat into flour, if the product of the *identical articles* delivered is to be *returned* to the original owner in a new form, it is said to be a bailment, and the title never vests in the manufacturer. If, on the other hand, the manufacturer is not bound to return the same wheat or flour or paper, but may deliver any other of equal value, it is said [not to be a bailment] . . . ." (Emphasis added.) *Powder Co.* v. *Burkhardt,* 97 U.S. 110, 116, 24 L. Ed. 973 (1877); see *Clark* v. *Rosen,* 126 Conn. 707, 708–10, 14 A.2d 39 (1940); *Douglass* v. *Hart,* supra, 687–88; *Johnson* v. *Allen,* 70 Conn. 738, 744–45, 40 A. 1056 (1898).

In order for the instant transaction to constitute a bailment, therefore, it is necessary that the final product be composed of the identical property originally

delivered.[4] The trial court found that the scrap was commingled, that the brass returned to Ballou need not have been of the same type of alloy and that "there was no understanding or agreement that the precise thing bailed would be returned to the plaintiff." The trial court further found that if any of the original scrap metal found its way back to Ballou, "this would be solely by chance." Because there was no evidence that the property returned was the product of the property delivered, except "solely by chance," we conclude that the arrangement between Ballou and Brimco could not constitute a bailment.

The judgment of the trial court is reversed and the matter is remanded with direction to render judgment for the defendant.

In this opinion the other justices concurred.

---

[4] A change in the character or nature of personalty can affect a right of ownership. Under the doctrine of accession, if the labor of one person is combined with material belonging to another, the owner of the original raw material can retain title to, and ownership of, the finished product. *Atlas Ins. Co.* v. *Gibbs,* 121 Conn. 188, 192–93, 183 A. 690 (1936); *Mather* v. *Chapman,* 40 Conn. 382, 397 (1873). If, however, the identity of the item has been destroyed, its nature substantially changed, or value greatly enhanced, as between the manufacturer and the original owner, the owner loses his right of ownership and retains only an action for the value of the goods lost. *Atlas Ins. Co.* v. *Gibbs,* supra, 192–93. Similarly, in a bailment locatio operis faciendi, changes in the nature of the property bailed have the potential to affect the property interest of the bailor. The law of bailments has responded, in a manner similar to the law of property, by finding that a bailment will still exist if, as noted above, the identity of the item has not been destroyed.