[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brought this action to recover the value of a 1975 Road Boss tractor, stolen while in the possession of the defendant as a bailee due to the defendant's negligence.
The defendant by way of a general denial has denied the existence of a bailment agreement between the parties, and has denied being negligent. Additionally, by way of a general denial, the defendant sought to introduce evidence that the defendant was acting in a corporate capacity, and thus, is not individually liable to the plaintiff for any loss due to the theft of the plaintiff's vehicle from the defendant's premises.
The plaintiff's husband testified that the plaintiff purchased the vehicle on or about January 29, 1997 for commercial trucking use. The purchase price of the vehicle was $1,500.00. The vehicle had been driven in excess of 350,000 miles, and was in need of substantial repairs. The plaintiff's husband testified that repairs of approximately $2,800.00 were made to the truck for windshields, batteries, six tires and brakes, but offered no documentary proof of the repairs.
After using the vehicle in a commercial manner for several months, the plaintiff and her husband decided to sell said vehicle. The plaintiff's husband and the defendant agreed that the plaintiff would place the vehicle at the defendant's premises located at 440 Lordship Boulevard, Stratford, Connecticut, where the defendant would attempt to sell the truck in exchange for a monetary commission. Said commission would be payable to the defendant at the time that any sale of the vehicle was consummated.
The plaintiff claims that she wanted $3,500.00 for the truck as her portion of any sales proceeds. The defendant was to keep any portion of the sales price exceeding $3,500.00 as his commission for selling the vehicle. The defendant claims that the plaintiff's husband, who delivered the vehicle to the defendant and negotiated the agreement with the defendant, as the plaintiff's agent, informed the defendant that the plaintiff wished to receive $2,500.00 as her portion of any sales proceeds. The defendant further testified that the defendant would keep all CT Page 15639 sales proceeds exceeding $2,500.00. In the event the vehicle sold for less than $2,500.00, the plaintiff was to reimburse the defendant for any costs, expended by the defendant in selling the vehicle.
In late September 1997 or early October 1997, the plaintiff's husband delivered the vehicle to the defendant's premises and handed the keys to the vehicle to the defendant.
On December 5, 1997, the parties agreed that since no sale of the vehicle had occurred, the plaintiff's husband would take back possession of the vehicle. However, on said date when the plaintiff's husband attempted to start the vehicle in an attempt to remove it from the defendant's place of business, the truck would not start. The parties then agreed that the plaintiff's husband would return in the next few days and would remove the vehicle from the defendant's place of business. The defendant returned the vehicle key to the plaintiff's husband.
On Monday, December 8, 1997, the plaintiff's husband informed the defendant that the vehicle was missing from the defendant's sales lot. The defendant last saw the vehicle on his sales lot on December 6, 1997 between 7:00 p. m. and 7:30 p. m. On December 8, 1997, the truck was reported stolen to the Stratford Police, the theft allegedly occurring sometime between December 6, 1997 at 7:30 p. m. and December 8, 1997 at 5:00 a.m.
The plaintiff, in her complaint, has alleged that the agreement with the defendant to sell her vehicle established a bailment between the parties, and that the loss off her vehicle was due to the defendant's negligence in that the defendant had knowledge of prior instances of theft and vandalism at his place of business, yet he failed to take any reasonable measures to prevent or discourage theft and vandalism. The defendant has denied this.
 I.
The defendant at trial testified that he was acting in a corporate capacity in all of his dealings with the plaintiff and her husband, and thus cannot be individually liable for the plaintiff's loss. The defendant claims that he was acting in his capacity as President of Stillman Auto Sales, Inc. The defendant testified that he handed a business card to the plaintiff's husband identifying himself in this capacity at the time of the CT Page 15640 oral agreement to sell the vehicle. In addition, the defendant testified that there was a large sign on the front of the sales building which read "Stillman Auto Sales and Service, Inc." The defendant further testified that he entered into the agreement as a disclosed agent of Stillman Auto Sales, Inc. and so advised the plaintiff's husband/agent. A copy of the business card and the "Certificate of Standing" from the Connecticut Secretary of State, designating Stillman Auto Sales as a corporation were entered into evidence as exhibits by the defendant, as well as photographs showing the sign on the sales building.
The plaintiff has claimed that the defendant never disclosed to the plaintiff or her husband that he was dealing with them in a corporate capacity, and never pleaded corporate capacity as a special defense in the pleadings. The plaintiff objected to the raising of this defense at trial, and further claims that corporate capacity as a defense was waived because it was not specially pleaded. The defendant claims that his general denial in the pleadings does not preclude him from asserting, at trial, that he entered into the bailment as a disclosed agent of Stillman Auto Sale, Inc., rather than in his individual capacity.
Section 10-50 of the Connecticut Rules of Court states that "no facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts that are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."
Decisions of Connecticut courts have held that the list of matters in Connecticut Practice Book § 10-50 to be specially pleaded are not exhaustive. Bennett v. Automobile Insurance Co.of Hartford, 32 Conn. App. 617, 621 (1993). "The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried, not to conceal basic issues until the trial is under way, and the plaintiff's witnesses have testified."Dubose v. Corobetta, 161 Conn. 254, 261 (1971). "A complaint must CT Page 15641 fairly put the defendant on notice of the claims. . . . against him. . . . The purpose of the complaint is to be decided at the trial of a case and is calculated to prevent surprise." Farrellv. St. Vincent's Hospital, 203 Conn. 554, 557-58 (1987). The same rationale applies to the defendant's obligation to specially plead his defense that he was acting in a corporate rather than individual capacity in this matter. If the defendant wished to take advantage of this defense, he should have pleaded it as a special defense.
The failure to raise the special defense would be waived [however] when the evidence at trial comes in without objection.Thompson Peck, Inc. v. Harbor Marine Contracting Corporation,203 Conn. 123, 132 (1987). Here, however, the plaintiff properly objected to the introduction of evidence regarding the defendant's claim of corporate, rather than individual capacity. "The plaintiff was entitled to an opportunity to make the corporation a party defendant in order to avoid a possible circuitry of action." Namura v. Machalsky, 96 Conn. 465, 466
(1921). The court finds that having failed to plead corporate capacity as a special defense, the defendant has waived that claim, and thus the defendant is precluded from taking advantage of that defense.
The plaintiff in her complaint alleged an agreement between herself and the defendant. The facts testified to in behalf of the plaintiff were consistent with that statement. If the defendant felt that notwithstanding these facts, the plaintiff had no cause of action against the defendant in his individual capacity, then a special defense of corporate capacity should have been alleged. Connecticut Practice Book § 10-50.
The Court, however, feels that it is important to note, that as the trier of fact in this matter the court has the opportunity to accept or reject the testimony of witnesses and to determine the weight to be given to the evidence. Eagar v. Barron,2 Conn. App. 468, 471 (1984). In weighing the testimony in this case regarding the oral and "handshake" agreement between the plaintiff's husband and the defendant, the Court can find little evidence to support the defendant's contention that he had placed the plaintiff or her husband on notice that they were dealing with the defendant in a corporate capacity rather than in an individual capacity. The lack of any agreement in writing weighs heavily against the defendant's credibility. The defendant holds himself out as a vehicle sales dealer, and is experienced in the CT Page 15642 field of vehicle purchases and sales, including vehicle title transfers, vehicle registration procedures and the laws and regulations regarding these procedures. Yet, he chose to deal with the plaintiff and her husband by verbal agreement in a completely informal manner. The court finds it hard to believe that under the circumstances and facts of this case, that the defendant took any steps to advise the plaintiff that he was working in a corporate capacity only.
 II.
"A relationship of bailer-bailee arises when the owner, while retaining general title, delivers personal property to another for some particular purpose or upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions." B.A. Ballou and Co., Inc. v. City Trust,218 Conn. 749, 753 (1991), quoting Moulding v. United States,257 F.2d 56, 60. "A bailment basically involves a surrender of possession and custody, therefore the question of termination is determined by the resumption of possession and custody by the owner, and where different inferences may be drawn, the question of termination is one of fact for the trier." Vece v. Vanacore, 2 Conn. Cir. 325, 328 (1963). The defendant in its memorandum of law cites Vece v. Vanacore, supra, as authority that a bailment terminates upon the return of the keys of the bailed goods to the plaintiff. That is erroneous. That case stated that "when the plaintiff received the key from the defendant, he immediately examined the boat and found the damage." Id at 328. The bailment did not terminate with the physical "handing over" of the keys, as the defendant would have the court believe.
In the instant case, the defendant handed the keys to the plaintiff's husband on December 5, 1997. Immediately, the plaintiff's husband went to the vehicle and attempted to start it, but was unable to, as the defendant had allowed the batteries to go dead. There was no testimony from the defendant that the plaintiff had delivered, the vehicle to him in late September, 1997 or early October, 1997 in an inoperable condition. The plaintiff's husband prior to leaving the defendant's premises, notified the defendant he would return in several days to remove the vehicle from the defendant's premises. The defendant agreed to allow the plaintiff's vehicle to remain on his premises. At this point, the vehicle had not been delivered back to the plaintiff-bailor by the defendant-bailee, in an operable CT Page 15643 condition.
The defendant, had he wished the bailment to terminate on December 5, 1997, readily had the tools, equipment and opportunity to start the engine of the plaintiff's vehicle to facilitate its removal from the defendant's premises. Under the circumstances prevailing on December 5, 1997, the court, as the trier of fact, cannot reasonably conclude that the handing of the vehicle key of an inoperable truck, to the plaintiff's husband constituted a sufficient transfer of possession and control to the plaintiff, which would terminate the bailment relationship existing between the parties.
 III.
"In the case of property, the bailee's contractual obligation is to exercise due care for the safekeeping of the bailed property, and, so, essentially, when loss or damage occurs, liability is based on negligence, even though negligence constitutes a breach of contract." Maynard v. James,109 Conn. 365, 368 (1929). "Once a bailment has been established and the bailee is unable to redeliver the subject of the bailment in an undamaged condition, a presumption arises that the damage to or loss of the bailed property was the result of the bailee's negligence." National Broadcasting Co. v. Rose, 153 Conn. 219,255 (1965); Barnett Motor Transportation Co. v. Cummins DieselEngines of Conn., Inc., 162 Conn. 59, 63 (1971). "The presumption of negligence by the bailee. . . . is one that continues in favor of the bailor until the bailee not only produces substantial contravening evidence but proves the actual circumstances involved in the loss of the property. If the bailee does prove these circumstances the burden of showing that, on the whole case the bailee was negligent rests on the bailor." NationalBroadcasting Co. v. Rose, supra; Malone v. Santora,135 Conn. 286, 291 (1949); O'Dea v. Amodio, 118 Conn. 58, 63 (1934); proof of actual circumstances must include the precautions taken to prevent damage, destruction or loss, as well as, evidence of the damage, destruction or loss. Frisell v. John W. Rogers, Inc.,141 Conn. 308, 311 (1954). It is for the trier of facts to determine whether the bailee has proven the actual circumstances and thus rebutted the presumption. Barnett Motor Transportation Co. v.Cummins Diesel Engines of Conn., Inc., supra, 64.
In this case both the defendant and the plaintiff offered evidence of the circumstances surrounding the theft. "That the CT Page 15644 plaintiff offered such evidence is not an election to forfeit the benefit of the presumption." Id. The plaintiff and the defendant offered evidence that the defendant's premises were lighted at night and that the premises were not fenced. Both parties testified as to the presence of three security cameras, only one of which was operational at anytime. The defendant testified that the one camera which actually worked, would not have covered the area of the premises where the plaintiff's vehicle was parked. The cameras which were not operational, would have filmed the subject vehicle but they had never worked since the time they were installed in early 1997. The defendant, called as a witness by the plaintiff and cross-examined by his own counsel, never rebutted the plaintiff's testimony that the one working camera on the defendant's property had no film in it on the dates in question and thus, was recording nothing.
The defendant testified that he had experienced six minor acts of vandalism to vehicles stored on his lot in 1997, but no vehicles had been stolen. On any given date, as many as fifty to one hundred vehicles could be stored on the defendant's premises. The defendant was on notice that vandalism was occurring. There was no testimony that any of this previous vandalism was filmed by even the one alleged operational video camera. There was also testimony that, had the one operational camera been working, it was ineffective during the night hours.
There was additional testimony by the defendant that due to" the truck's dead batteries, that a theft could not be easily accomplished, and that it would have required a considerable amount of time and effort to remove this truck from the premises either by charging the batteries, pushing the truck or towing the truck.
The court finds that the defendant had inadequate security precautions in place to protect the plaintiff-bailor's truck. The defendant-bailee has not overcome his burden to rebut the presumption of negligence by a preponderance of the evidence.
 IV.
The plaintiff is claiming that the value of her stolen truck is $3,500.00, while the defendant places the value of the truck at $1,500.00 or less. The measure of damages for loss or damage to the subject matter of a bailment is the value of the property at the time of the loss. Griffin v. Nationwide Moving and StorageCT Page 15645Co., 187 Conn. 405, 419 (1982). "The court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." Id. quoting Bronson and TownsendCo. v. Battistoni, 167 Conn. 321, 326-327 (1974). Since damages are an essential element of the plaintiff's proof before he is entitled to recover, they must be proven with reasonable certainty. Bianco v. Floatex, Inc., 145 Conn. 523 (1958)
The evidence shows that the plaintiff purchased the truck from a relative for the sum of $1,500.00 in January 1997. The truck had mileage totaling 350,000 miles, and was in need of repairs. The plaintiff's husband testified that he and the plaintiff spent the sum of $2,300.00 for repairs, including batteries, six tires and two windshields. Other than this oral testimony, no receipts or documentation for these repairs were presented to the court as the trier of fact, by the plaintiff or any witness for the plaintiff. The truck was then used for commercial trucking purposes for a period of approximately six months, causing wear and tear on the truck and any replacement parts.
The plaintiff's husband testified that while the truck was placed for sale on the defendant's premises, the defendant only received one offer for the truck, that being for the sum of $2,500.00. The plaintiff rejected this offer, as the plaintiff was seeking a sale for $3,500.00.
The defendant testified that the one offer to purchase the truck was for the sum of $1,500.00, not $2,500.00 as testified by the plaintiff's husband. The defendant further testified that the plaintiff's husband had informed him that the plaintiff would not sell the truck unless she received at least $2,500.00 of any sales proceeds. The defendant, at the time he signed the Stratford Police Department incident report, listed the value of the stolen truck at $3,500.00.
It is difficult for the court to place a value on the stolen truck, given its mileage, its age, and the differing testimony regarding the original agreement between the parties for a listing sales price. However, the best indication of the truck's value is what the marketplace was willing to pay. The parties agree that the truck was at the defendant's place of business for approximately two months prior to its theft. Despite advertising the truck for sale, both parties agree that the plaintiff was CT Page 15646 made aware of only one offer to purchase the truck. The amount of the offer was either $1,500.00 if you believe the defendant, or $2,500.00 if you believe the plaintiff.
However, in the defendant's trial brief, the defendant has admitted that he would attempt to sell the plaintiff's truck, and if it were sold, the defendant would retain any profit over $2,500.00. The defendant, as a dealer in the sales of vehicles of this type, did not find the sum of $2,500.00 objectionable when he entered into the agreement. Based on this guidepost and in weighing the credibility of the witnesses who testified at trial, the court finds the value of the stolen 1975 Road Boss tractor trailer VIN # CTFBD2DGH830002 to be $2,500.00.
Accordingly, the court finds that judgment in this matter shall enter in favor of the plaintiff, Elaine Pacelli, and against the defendant, Ivan Butts, and further the court awards the plaintiff the sum of $2,500.00.
The Court
By Arnold, J.