REGAN, Judge.
The plaintiff, Frank L. Smith, filed this suit against the defendants, Jung Hotel Corporation and its liability insurer, The Travelers Insurance Company, endeavoring to recover the sum of $158,000.00 representing damages incurred by him as the result of the alleged negligence of the defendant’s employees in permitting the electric lights to be extinguished in the Tulane Room in which he was guarding equipment for his employer, National Service, Inc., thus causing him to trip over what he asserts was improperly laid carpet while endeavoring to reach the front door to obtain assistance from the hotel employees in having the lights turned on again. He alleged that earlier in the evening the lights had been extinguished and he had reported this to the night manager, who turned them on and instructed the hotel engineer to see that they remained on at all times because of the plaintiff’s presence in the Tulane Room.
The defendants answered and denied all the pertinent accusations of negligence and also denied that the plaintiff had ever reported that the lights were extinguished to the night manager. They also insist that any injuries incurred by him resulted from his own negligence in failing to keep a proper lookout, in failing to carry a flashlight, and in attempting to walk too rapidly across an unlighted, unfamiliar area. In the alternative, they pleaded the contributory negligence of the plaintiff, and prayed for dismissal of the suit at his cost.
Following a trial on the merits, judgment was rendered in favor of the defendants and against the plaintiff dismissing the suit at his cost.
From that judgment, the plaintiff has prosecuted this appeal, and the defendants, in their answer thereto, prayed that the award of court costs be increased by the amount of $528.45, which they assert was expended to procure depositions.
The record discloses that the plaintiff herein, Frank L. Smith, who had been employed for one week as a guard for National Service, Inc., was protecting equipment in the Tulane Room of the Jung Hotel on November 3, 1966. He testified that he began his duties at approximately 6:00 P. M. by making a general tour of the area, and in the course thereof, he observed the location of the doors, service elevator, and crates of equipment that had been placed throughout the room. He explained that between 8:30 and 9:30 *113 P. M. the lights in the room were extinguished, after which, he walked about 20 feet to the front door, saw several women cleaning offices and one agreed, at his request, to notify the manager or someone in charge to turn the lights on, and he remained outside the room until they were turned on, but he stated that he did not know who turned them on or where they were turned on. He related that after the lights went out, there were two men whom he believed to be the manager and engineer of the hotel because of their appearance, who conversed outside of the Tulane Room; however, the identity of these persons was never ascertained. He stated that after the lights were turned on, he returned to his duties, when at about 11:00 P. M., the lights were extinguished a second time, and since he was in the rear of the room, it was necessary for him to walk a great distance in order to reach the front door for the purpose of locating someone to turn the lights on, and that while making his way, he fell on his right side after tripping on a carpet which he asserts was improperly laid, although he did not know that this was the cause of his accident until he inspected the area after his fall since the room was in darkness. He conceded that his employer requested that he provide himself with a flashlight and that he had matches with him, but that he did not use them to light his way. He stated that he managed to stand, and after steadying himself, he made his way to the front door and to the switchboard where a call was placed for someone to turn the lights on again, which was accomplished in about 5 to 10 minutes. He resumed his duties, and to reiterate, he inspected the area of his fall at which time he observed the ruffled up, improperly laid carpet in the area at which he had fallen, and he assumed that this was what he caught his foot on. He then called his employer from a phone located in a small room at the back of the Tulane Room, and informed him of the accident and that when he was relieved of his duties at 11:45 P. M., which was fifteen minutes prior to the end of his regular shift, he reported his fall to the hotel’s employee at the desk, and later he visited the emergency room of Touro Infirmary.
He could not recall whether he had worked the following day or not, but stated that he was examined on that day by Dr. A. N. Houston, who prescribed medication and physical therapy. His complaints consisted of stiffness in his leg and general soreness, and about one week following the accident, he felt a continuous dull ache in his back with pain in his leg once in a while. A few weeks following the fall, he returned to Tuscumbia, Alabama, where he was treated by Dr. John Shuttleworth, and he described his pain at that time as being “real bad” and that he could not “get around real good”, and Dr. Shuttleworth X-rayed him and treated him with traction in the hospital for two weeks, and he was fitted with a corset. He stated that he was hospitalized a second time for nine days for surgery on his knee.
Evidence was introduced showing that the only persons who could have been assistant managers at the Jung Hotel on the night of November 3, 1966, were Louis Glen Payton and Theordore C. Meade, Jr., and both testified that they had never been informed that the lights were extinguished in the Tulane Room that night and that if they had been so advised, they would have remembered it. Leon Prestía, general manager of the hotel, testified that on November 3, 1966, there was no difficulty with the electrical power in the hotel and that he had no recollection of any report that the lights had gone out, which he would have remembered, .and his testimony was corroborated by Oscar Offri-con, who worked on the desk on November 3rd. He also testified that a report was made to him by a man, who said he had fallen in the Tulane Room when the lights went out and that he was going to the hospital, but that the man did not remain for him to obtain detailed information, but that he did make a handwritten report of what was told to him.
*114 Dr. A. N. Houston testified that the plaintiff informed him he had tripped over a rug at the Jung Hotel and twisted his knee. He explained that the only injury suffered by the plaintiff was a mild sprain of his right knee, for which he was given diathermy on three occasions, and that Smith did not complain of back pain.
The deposition of Dr. Shuttleworth, which was read into the record corroborated Smith’s testimony of his treatment in Alabama.
The lower court in its reasons for judgment in favor of the defendants dismissing the plaintiff’s suit pointed out that Smith had failed to bear the burden of proving with that certainty that the law requires that the defendants were negligent in any respect. It pointed out that the only suggestion of negligence was the plaintiff’s uncorroborated, self serving testimony that the lights had been extinguished twice, which was contradicted by the testimony of the employees of the Jung Hotel.
This is obviously a case which permits of the application of the doctrine that the conclusions of the trial court will not be disturbed or reversed when questions of fact are exclusively encompassed by the judgment, unless clearly erroneous. Our analysis of the record convinces us that there was no error in the conclusions reached by the trial court. Therefore, for the foregoing reasons, the judgment of the lower court is affirmed.
There is no merit in the defendant’s request for the imposition of additional court costs in the amount of $528.45 since this sum was expended for depositions which were never introduced as evidence during the trial hereof.
The plaintiff is to pay all other costs incurred herein.
Affirmed.