Joyce K. **FERRUCCI** and Michael Ferrucci Jr.

v.

**ATLANTIC CITY SHOWBOAT, INC.**

No. Civ. 3:95CV951 (HBF).

United States District Court, D. Connecticut.

March 29, 1999.

**130**

Jon L. Schoenhorn, Law Offices of Jon L. Schoenhorn, Hartford, CT, Beth J. Rittenband, Rocky Hill, CT, for Plaintiffs.

Lisa M. Kowtko, Halloran & Sage, West Westport, CT, Miles David Newman Esty, Esty & Buckmir, New Haven, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

Plaintiffs Joyce and Michael Ferrucci filed this product liability action pursuant to Conn.Gen.Stat. § 52–572m, *et seq.,* against Atlantic City Showboat, Inc.,[1] a hotel-casino owner and operator located in New Jersey. Joyce Ferrucci sustained injuries on June 15, 1993, when she tripped and fell over a bed while a guest at the Showboat Hotel & Casino in Atlantic City. Plaintiffs claim monetary damages for injuries and loss of consortium caused by the hotel's maintenance of premises leased to plaintiffs in a defective and dangerous manner. Jurisdiction predicated on diversity of citizenship is based on 28 U.S.C.

---

1. Ocean Showboat, Inc. was the named defendant in the Complaint [Doc. # 1]. On July 21, 1995, the plaintiff moved to substitute defendant Atlantic City Showboat, Inc. for Ocean Showboat, Inc. This Motion was granted by the Court on August 22, 1995. The defendant is the owner of the Showboat Hotel and Casino located in Atlantic City, New Jersey.

§ 1332. Pending before the Court is defendant's Motion for Summary Judgment. For the reasons that follow, defendant's motion [**Doc. # 42**] is **GRANTED**.[2]

*STANDARD*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. School Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d

979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992).

*UNDISPUTED FACTS*

1. On June 15, 1993, Joyce Ferrucci was a guest at the Showboat Hotel & Casino in Atlantic City, New Jersey. The Showboat Hotel & Casino was owned and operated by the defendant, Atlantic City Showboat, Inc. [Doc. # 46, at ¶¶ 1, 2].

2. While a guest at the Showboat Hotel & Casino, plaintiff stayed in room 1104. She did not have exclusive possession and control of room 1104, because Showboat Hotel & Casino had the ability to enter room 1104. The defendant's agents, servants and employees would enter rooms for cleaning, maintenance, noise complaints and security matters.[Doc. # 46, at ¶¶ 3, 4, 5, 6].

3. At no time did Joyce Ferrucci obtain a property interest in room 1104. Rather, plaintiff merely had the right to occupy room 1104 for a limited duration subject to the operating procedures of the hotel. [Doc. # 46, at ¶ 7].

4. On June 15, 1993, Joyce Ferrucci fell while a guest in room 1104. Julie Matteis

---

2. Considered were defendant's Motion for Summary Judgment [Doc. # 42], Memorandum in Support of Defendant's Motion for Summary Judgment [Doc. # 43], Affidavit of Debra L. Sroka [Doc. # 44], Affidavit of Miles N. Esty [Doc. # 45], Statement of Material Facts as to Which There is No Genuine Issue to be Tried Pursuant to Local Rule 9(C)2

[Doc. # 46], plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment [Doc. # 59], plaintiffs' Statement of Material Facts as to Which There Exist Genuine Issues to be Tried [Doc. # 60] and defendant's Reply to Plaintiff's Objection to Motion for Summary Judgment [Doc. # 61].

was in the room with plaintiff at the time of the fall. [Doc. # 46, at ¶¶ 11, 13].

5. Plaintiff claims the bed in room 1104 was defective and caused her to fall. At plaintiff's deposition, Joyce Ferrucci admitted that she does not know what caused her to fall. At Julie Matteis's deposition, she testified that her view of plaintiff's feet was obscured and she did not see what caused plaintiff to fall. Plaintiffs have not retained an expert witness who will testify at trial regarding any alleged defect. [Doc. # 46, at ¶¶ 12, 14, 15, 16].

6. Plaintiffs assert a claim against the defendant based on the Connecticut Products Liability Act, Conn.Gen.Stat. § 52–572m, *et seq.* ("CPLA"). [Doc. # 1].

## DISPUTED FACTS

1. The defendant hotel owner is a "product seller" within the meaning of the Connecticut Product Liability Act, Conn. Gen.Stat. § 52–572m. A bed in a hotel room is a "product" under CPLA. [Doc. # 60, at ¶¶ 1, 2].

2. The defendant hotel owner engages in the bailment of products, including furniture and beds in hotel rooms, to guests of their hotel. Defendant, while retaining general title, delivered furniture, including the bed in the hotel room, to plaintiffs for a particular purpose upon an express or implied contract to redeliver the goods when that purpose was fulfilled, or to otherwise deal with the goods according to the bailor's direction. [Doc. # 60, at ¶¶ 3, 4].

3. Plaintiff Joyce Ferrucci's foot became stuck on a corner of the bed in defendant's hotel room. Plaintiff's foot was caught on something protruding from the bed. It is unclear if this protrusion was metal or wood; however, it was coming from the bed. [Doc. # 60, at ¶¶ 5, 6].

4. When moving past the bed, plaintiff took approximately four steps before her body twisted and she fell over the corner of the bed. [Doc. # 60, at ¶ 7].

## DISCUSSION

The dispositive issue in this product liability action is whether defendant is a "product seller" under the CPLA. Plaintiffs argue that Atlantic City Showboat, Inc. is a product seller within the meaning of CPLA and, therefore, can be held liable under CPLA for injuries sustained by plaintiff as a guest on the premises of the hotel. Further, plaintiffs indicate they can prove the alleged product was defective and that the defect caused the incident which resulted in plaintiff's injury. Defendant argues that it is not a product seller under CPLA and, therefore, cannot be held liable for the plaintiff's injury. Additionally, defendant avers that plaintiff cannot prove the alleged product was defective or that the defect caused the subject incident.

### Connecticut Products Liability Act

In 1979, Connecticut enacted the Product Liability Act, a modified version of the Model Uniform Product Liability Act. *Williams v. McDonald's of Torrington,* No. CV 960562657, 1997 WL 276308, at \*1 (Conn.Super.Ct. May 8, 1997) (citing *Carbone v. Connecticut Light & Power Co.,* 40 Conn.Supp. 120, 122, 482 A.2d 722 (1984)). Under the CPLA, a product liability claim is defined as follows:

> "Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent.

Conn.Gen.Stat. § 52–572m(b). Pursuant to Conn.Gen.Stat. § 52–572n(a),

> A product liability claim ... may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

 To recover under the CPLA, "the plaintiff must plead and prove that ... the defendant was a "product seller" within the meaning of the Act." *Bobryk v. Lincoln Amusements, Inc.*, No. CV950547084S, 1996 WL 24566, at *2 (Conn.Super.Ct. Jan. 5, 1996). The CPLA defines a "product seller" as:

> any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

Conn.Gen.Stat. § 52–572m(a). "Whether the defendant is a 'product seller' is a question of law for the court to determine." *New England Variety Distrib., Inc. v. Alarm Sec. Protection Co., Inc.*, No. CV 950545381, 1998 WL 712363, at *4 (Conn.Super.Ct. Sept. 25, 1998) (citation omitted).

 "[N]either the statute nor our appellate courts have yet defined the word 'product' for the general purposes of this statutory scheme." *Williams*, 1997 WL 276308 at *2 (quoting *Dumitrie v. Fernap, Inc.*, 1994 WL 185756, 11 Conn.L.Rptr. 449 (Conn.Super.Ct. April 25, 1994.)). *New England Variety Distrib., Inc.*, 1998 WL 712363, *4 ("The CPLA does not define the term 'product.'"). As a result, "the definition of what is a product has been developed entirely by case law." *Williams*, 1997 WL 276308, *2. Courts have defined "product" as

> any item, thing, or commodity which, upon acquiring its physical existence and identity, through the process of manufacture or otherwise, is put in the stream of commerce either by sale, for use, consumption or resale or by lease or bailment, and as an object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce, the definition from the Model Uniform Product Liability Act.

*New England Variety Distrib., Inc.*, 1998 WL 712363, *4 (internal quotation marks and citations omitted). However, "[o]nce a particular transaction is labeled a 'service,' as opposed to a 'sale' of a 'product,' it is outside the purview of our product liability statute." *Zichichi v. Middlesex Memorial Hospital*, 204 Conn. 399, 403, 528 A.2d 805 (1987). "When distinguishing between a service and a product, some courts focus on the object of the contract." *New England Variety Distrib., Inc.*, 1998 WL 712363, *5 (multiple citations omitted; *see Paul v. McPhee Electrical Contractors*, 46 Conn.App. 18, 23, 698 A.2d 354 (1997)) (holding that an electrician who installed a light fixture was not a product seller under the CPLA since there was no indication that the electrician was "involved in placing light fixtures into the stream of commerce"); *Zichichi*, 204 Conn. at 405, 528 A.2d 805 (holding "the provision of blood is to be considered a medical service not a sale" under the CPLA).

*Is Defendant a "Product Seller" under the CPLA?*

Plaintiffs take the position that defendant's furnishing of the bed to plaintiffs constitutes a bailment. Plaintiffs offer no case law on point. Rather, they argue by analogy that, as a bailor of the bed, Atlantic City Showboat is a "product seller" under the CPLA.

 "A bailment involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement." *B.A. Ballou & Co., v. Citytrust*, 218 Conn. 749, 753, 591 A.2d 126

(1991) (internal quotation marks and citations omitted). A bailment situation is one in which "the owner, while retaining general title, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions." *Id.* (quoting *Maulding v. United States,* 257 F.2d 56, 60 (1958)).

▮ "A bailment requires that the property bailed be placed in the possession of the bailee so as to give the bailee sole custody and control of the property." *Ferryman v. City of Groton,* No. 501482, 1991 WL 112851, at *5 (Conn.Super.Ct. June 11, 1991) (citing *Desmond v. Wall,* 39 Conn. Supp. 502, 504, 466 A.2d 803 (1983)). A bailment does not arise unless there is an actual change of possession or delivery from one individual to another, resulting in the bailee's exclusive possession of the bailed property, even to the exclusion of the property owner. 8A Am.Jur.2d Bailments § 42 (1997).

▮ Plaintiffs' reliance upon *Morales v. Minchin,* No. 312585, 1995 WL 811527 (Conn.Super.Ct. Dec. 21, 1995) to establish that defendant's furnishing of a bed constitutes a bailment is unavailing. First, the *Morales* court denied defendant's motion for summary judgment finding genuine issues of material fact as to whether a bailment existed and whether defendant was a "product seller" under the CPLA. *Id.* 1995 WL 811527, at *3. Here, however, it is undisputed that the plaintiff did not have exclusive possession and control of room

1104, because defendant had the ability to enter the room for the purposes of cleaning, maintenance, noise complaints and security matters. [Doc. # 46, at ¶¶ 3, 4, 5, 6]. Here, plaintiffs did not obtain exclusive possession of the hotel room. Rather, plaintiffs only had the right to occupy room 1104 for a limited duration subject to defendant's operating procedures and control. *See Bobryk,* 1996 WL 24566, at * 5 (holding plaintiff was never the bailee of the Flying Chairs as defendant owned and operated the physical apparatus at all times. While plaintiff "may sue the ride's operator in negligence, [she] may not sue him on the theory of strict products liability."). Therefore, an essential element of a bailment relationship, exclusive possession and control by the bailee, is lacking.[3] If there is no bailment relationship, defendant is not a "product seller" under the CPLA. Consequently, as a matter of law, Atlantic City Showboat, Inc., is not a "product seller" under the CPLA.

This Court has found no analogous cases where a plaintiff has sued a hotel under a product liability theory for injuries sustained in a hotel room. *See Bernard v. Marriott Corp.,* No. CV910114261S, 1992 WL 108040, *1 (Conn.Super.Ct. May 11, 1992) (Plaintiff brought personal injury action against the Marriott. Marriott, a third-party plaintiff filed an action seeking indemnification on the basis of product liability from General Electric, alleging that a heat lamp installed in one of its rooms was defective and it was GE's active negligence which was the direct and imme-

---

**3.** The requirement of exclusive control by the bailee in a bailment situation has been recognized in other jurisdictions. *See Zweeres v. Thibault,* 112 Vt. 264, 23 A.2d 529, 532 (1942) ("Where personal property is left upon another's premises ... the test is whether or not the person leaving the property has made such a delivery as to amount to a relinquishment, for the duration of the relation, of his exclusive possession, control, and dominion over the property, so that the person upon whose premises it is left can exclude, within the limits of the agreement, the possession of

all others. If he has, the general rule is that the transaction is a bailment."); *U.S. v. $79,-000 in Account Number 2168050/6749900 at The Bank of New York,* No. 96 CIV. 3493, 1996 WL 648934, at *6 (S.D.N.Y. Nov. 7, 1996) ("In order to constitute sufficient delivery there must be a full transfer, either actual or constructive, of the property to the bailee, so as to exclude the possession of the owner and all other persons, and give to the bailee for the time being the sole custody and control thereof.").

diate cause of the injuries to an occupant);[4] *Korsak v. Atlas Hotels, Inc.,* 2 Cal.App.4th 1516, 1528, 3 Cal.Rptr.2d 833 (Cal.App. 4 Dist.1992) (guest brought negligence action against hotel for injuries sustained when shower head fell off its pipe.); *Smith v. Jung Hotel Corp.,* 224 So.2d 111 (La. App. 4 Cir.1969) (negligence action brought for injuries sustained tripping on carpet in hotel room).

Because defendant is not found to be a "product seller," defendant cannot be held liable under the CPLA for any alleged defects in the bed. Therefore, the Court need not address the question of whether the alleged product was defective and, if so, whether the defect caused the subject incident.

*CONCLUSION*

Accordingly, defendant's Motion for Summary Judgment **[Doc. # 42] is GRANTED.**[5] The Clerk shall enter judgment in favor of the defendant and close the case.

---

4. In *Bernard,* the plaintiff instituted an action against Marriott to recover for personal injuries sustained when a heat lamp in a hotel room exploded, allegedly causing injury to the plaintiff. 1992 WL 108040, *1. Marriott filed a third-party action against General Electric Company for indemnification. *Id.* General Electric moved to strike the complaint on the ground that, because Marriott had possession of the lamp, it could not satisfy the requirement that General Electric had exclusive control over the situation. *Id.* In denying the motion, the court stated that "[i]n the product liability context, where it is claimed that the manufacturer has placed a defective product in the stream of commerce, the court is unwilling to conclude, as a matter of law, that

the parting with possession of the product by the manufacturer prevents it from being in 'exclusive control over the situation' where the product causes an injury to a third party. In light of the evidence that might be admissible under the pleadings in the present action, the court regards the question of exclusive control an issue to be determined by the trier of fact." *Id.*

5. This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. # 52] on November 12, 1997, with appeal to the Court of Appeals.